## Commonwealth v. Johnson.

(Decided April 28, 1914.)

### Appeal from Laurel Circuit Court.

1. Homicide—Dying Declarations—Withdrawal of Statement of Deceased from Jury.—The principle upon which dying declarations are admitted is that they are made in extremity, when the party is at the point of death and when every hope of this world is

gone and when the mind is induced by the most powerful considerations to speak the truth, and where a statement in the form of such declaration was allowed to go to the jury, but an attending physician testified that he thought perhaps the shot had not penetrated the bowels and was not serious, and he thought he so notified deceased, the trial court did not err in withdrawing the statement.

2. Homicide—Dying Declarations—Procedure to Establish Admissibility.—In determining whether evidence of a dying declaration is competent, it is the safer practice for the court to hear all of it in advance of its introduction before the jury and in their absence, in order that they may get no impression from it that would be prejudicial to the defendant, if the court should rule it incompetent and reject it.

JAMES GARNETT, Attorney General, QUINN, REAMS & JOHNSON and J. C. CLOYD for appellant.

HAZLEWOOD & JOHNSON and R. B. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Certifying the law.

Appellee was indicted for the murder of Thomas Doby. There was a mistrial, and the Commonwealth, complaining of erroneous rulings of the lower court, brings the case here to have the law certified for the next trial.

The questions presented are: (1) Competency of dying declarations. (2) Procedure in the court below to establish their admissibility.

About eight o'clock one morning Doby, and a companion, passed appellee's farm on their way to the postoffice. Appellee was repairing his fence on the road side. After a few sharp words, and threatening demonstrations, appellee shot and wounded Doby, and from which he died the next morning about eight o'clock. The shot perforated his intestines. At the first words, or demonstrations, Doby's companion ran, and appellee is the only eye witness. After he was shot Doby ran about 100 yards, and fell. Bud and Alex. Sullivan were nearby, and hearing the shots ran to his relief. They testify that Bud Sullivan took him by the hand, and knelt at his side, and Doby said: "God bless you Bud I am bound to die and leave this world." These witnesses aided in taking him home, and were with him almost constantly until his death. They say he was praying most of the time, calling upon the Lord to save his soul.

About midnight, R. A. Jones, a notary, was sent for, and with some others went to Doby's home to get a statement from him. On arriving at Doby's home, Jones wrote out the statement in the hearing of the Sullivans and others. There is no dispute that the writing correctly recites Doby's statements, or the competency of them, if admissible.

The court, not in the presence of the jury, heard the above testimony of the Sullivans, and upon their evidence concluded that the written statement was admissible, and permitted it to go to the jury. This was over the objection of the defendant who desired, and offered to introduce the evidence of witnesses affecting its admissibility. The trial proceeded with the declaration in evidence before the jury; the Commonwealth closing its case.

After testifying for himself, the defendant introduced the notary, R. A. Jones, Abel Burnett, Campbell Smith and Dr. Holt. Jones, Burnett and Smith corroborated the Sullivans in that Doby seemed to realize that his wound was serious, and that his principal talk "was asking the Lord to have mercy on his poor soul." Jones, however, testified, as did also Smith and Burnett, in substance, that before taking the statement from him, "he asked him whether he could get well or not, and he (Doby) said he did not know, he was suffering mighty. * * * I told him his friends wanted a statement and I said Tom it won't worst your case any. If you get well it is alright, and if you do not your friends will have the statement."

Dr. Holt was called to attend Doby soon after he was shot, and examined him. He says the bullet ranged down from the top of the hip bone, and for that reason he thought "perhaps it had not penetrated the bowels and was not serious." In answer to whether he so notified Doby, he replied: "I think I notified him of that fact." The Commonwealth, however, objected to this answer, and the court did not let it go to the jury.

Upon hearing this evidence with reference to the statement, the court reconsidered its ruling, and withdrew it from the jury with instructions that they should not give it any consideration. Upon the evidence left before them, the jury failed to agree upon a verdict.

The rule in Kentucky as to the admissibility of dying declarations, and it is the rule in most other jurisdic-

tions, is stated in the following language in the case of Tibbs v. Commonwealth, 138 Ky., 558:

"It is well settled that, in prosecutions for homicide, the declarations of the deceased voluntarily made, while sane, when in *articulo mortis,* and under the solemn conviction of approaching dissolution, concerning the facts and circumstances constituting the *res gestae* of his destruction, are always admissible in evidence, provided the deceased would be a competent witness if living. The general principle upon which this species of evidence is admitted is that they are declarations made in extremity, when the party is at the point of death and when every hope of this world is gone, when every motive of falsehood is silenced, and the mind is induced by the most powerful consideration to speak the truth; a situation so solemn, and so awful, being considered by the law as creating an obligation equal to that which is imposed by a positive oath administered in a court of justice."

As other cases express it, such statements are admissible if the party "is *in extremis* and has given up all hope of this life." Peoples v. Commonwealth, 87 Ky., 487; Commonwealth v. Mathews, 89 Ky., 288; Arnett v. Commonwealth, 114 Ky., 591; Coyle v. Commonwealth, 122 Ky., 781; Commonwealth v. Griffith, 149 Ky., 405; Biggs v. Commonwealth, 150 Ky., 675; Cornett v. Commonwealth, 156 Ky., 795; Eversole v. Commonwealth, 157 Ky., 478.

Had there been no testimony other than the Sullivans', the declaration would have certainly been admissible as evidence. Doby said he was bound to die and leave this world, and in view of his constant prayers, and their nature, together with the serious character of his wound, and his realization of it, and all the suffering it caused him, we are convinced he was under a solemn conviction of impending, or approaching dissolution, or had Doby with these expressions made a statement of the facts with reference to the difficulty, this statement of facts would have been competent notwithstanding expressions later made tending to show that hope of recovery had revived within him. The statement offered in evidence, however, was not taken until midnight, sixteen hours later, and in view of the testimony of the doctor, that he thought he had in the meantime told Doby his wound was not fatal, and his answer to Jones' question that he did not know whether he would get well or not, we are

inclined to the opinion that the statement does not come within the rule of competency above quoted. This character of evidence from its very nature is such that the defendant is deprived of the right of cross-examination, or of testing the motives of the witness. For these reasons the courts must exercise great care in deciding whether they are admissible. It must appear that he was *in extremis* and under a solemn sense that death was near approaching so that every motive to falsehood or revenge be therefore absent. From the facts as they now appear, we are of opinion that the lower court did not err in withdrawing the statement.

The question now remains as to how the court should proceed on another trial, and with further evidence to test their admissibility. It is generally conceded that the preliminary question as to whether the party offering in evidence the statements of deceased in a trial for homicide has laid a proper foundation for their admission is primarily for the judge, or the court presiding at the trial, and to be heard apart from the jury. In most jurisdictions it is held that these preliminary facts are for the court alone, and that with them, at that time, the jury has nothing to do. To this end, and prior to the admission of the declaration as evidence, the court should hear the proof of both the Commonwealth and defendant on these matters. These principles are in harmony with the rulings of this court. In Coyle v. Commonwealth, 122 Ky., 781, in the closing paragraph, it was said:

"On another trial the court should, in the absence of the jury, hear evidence of all facts and circumstances that the parties wish to produce, and determine what statements of the deceased, if any, were made *in extremis,* and permit those to be introduced; and then the appellee should be permitted to introduce any statements made afterwards, if any, by the deceased for the purpose of lessening or destroying the force and effect thereof."

In Wilson v. Commonwealth, 141 Ky., 341, we said:

"In determining whether evidence of a dying declaration is competent, it is undoubtedly the safer practice for the court to hear it in advance of its introduction before the jury and in their absence, in order that they may get no impression from it that would be prejudicial to the defendant, if the court should rule it incompetent and reject it."

It is within the discretion of the court to determine how far the examination shall extend, and the court in the exercise of that discretion will not be disturbed unless it appears that it was abused, or that the court acted arbitrarily, or unreasonably.

If the court permits the declaration to go to the jury, then the jury should also hear all the competent testimony which was submitted to the court on the question of admissibility—that is, such evidence will be heard by the jury as any other evidence, and in the usual order for the introduction of testimony. As said in the Coyle case, *supra,* "its credibility is entirely within the province of the jury, who should weigh all the circumstances under which the declarations were made, including those already proved to the judge, and to give the testimony only such credit as, upon the whole, they think it deserves."

It seems that the precise location of the spot where the shooting occurred is a material issue in the case. Appellee raises a question as to the competency of the evidence of N. J. Stanberry on the point. Stanberry says that he went to the house where Doby had been taken about an hour and a half after he was shot (after the statements above quoted were made to the Sullivans), and Doby told him that the shooting occurred "just beyond a certain apple tree," the only one that stood on that side of the road. Defendant objects to this on the idea that it was not a part of the dying declaration written down by Jones, above referred to. It was a statement, however, made at a time when Doby was *in extremis,* and under a solemn sense of impending dissolution, and of a fact about which Doby could have testified if living, and was a part of the *res gestae.* This testimony was clearly competent.

This opinion is certified as the law of the case.