## Hunter v. Commonwealth.

(Decided October 12, 1916.)

### Appeal from Daviess Circuit Court

1.  Criminal Law—Homicide—Evidence.—Under the plea of not guilty the defendant in homicide cases may introduce evidence as to what produced the death of the deceased and show by evidence that it was caused by the act of the deceased accidentally or purposely committed.

2.  Criminal Law—Homicide—Instructions.—When the defense in homicide is that the accused killed the deceased by accident or in self-defense, the accused is entitled to an instruction presenting the defense relied on. But when the defense is that the accused had nothing to do with the killing, and that the act was committed by some other person, or that the deceased killed himself, an instruction, telling the jury that he cannot be found guilty unless he did the killing, presents the only defense the accused has, and it is not essential to his defense that the jury should be instructed on the theory that the deceased was killed by another person or killed himself.

LOUIS I. IGLEHEART for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, William B. Hunter, who was charged in the indictment with the murder of Rena Wilson, was convicted under the voluntary manslaughter statute and his punishment fixed at from two to five years in the State penitentiary. The facts disclosed by the evidence are substantially as follows:

It appears that Hunter and Rena Wilson had known each other for some time, but it is not entirely clear what the relations between them were. On the afternoon of the day she was killed Rena Wilson purchased a pistol, and after it had been loaded in the store at her request, she remarked to the salesman in answer to an inquiry, that "she would not shoot anybody unless they bothered her, but that if anybody bothered her she might shoot them."

It is further shown that at this time she was slightly intoxicated. A few hours after this Ollie Hester, in passing by the business house of Hunter in company with his wife, stopped for a few minutes near the door of Hunter's place of business and while standing there heard two shots fired. When the shots were fired he stepped in a doorway nearby, and a few seconds afterwards saw a woman fall into the street out of the door of Hunter's business house, and immediately saw Hunter come out and take hold of her, insisting that she go back into his house, which she refused to do, saying, "I don't want to go back there; I want to go home;" whereupon Hunter said, "Come in here, you damn yellow bitch," at the same time putting his arm around her and forcibly pulling her inside the door of his building. This witness said Hunter had something in his hand and that very shortly after he had pulled the woman in the house he heard three shots fired in the house in quick succession, and soon thereafter the lights in the house were put out and the blinds pulled down.

The wife of Hester, who was with him, after testifying to the occurrence substantially as he did, said that when Hunter was forcing the woman to go into the house from the street, he had a pistol in his hand.

John Lyons, a police officer who came to the scene of the shooting soon afterwards, testified, in substance, that Hunter, who was under the influence of liquor, when asked if there had been any trouble in his building,

said there had not been, and objected to the officer going into the house. He further said that Hunter, after resisting for a time his efforts to go in the house, finally said that there was a damn woman in there who had done some shooting—who had shot herself trying to kill him. When the officer went into the room he found Rena Wilson lying dead on the floor.

It might here be stated that she came to her death from the effect of two bullets, one of which entered her head just behind the ear and the other entered her back near the shoulder blade.

Hunter in his own behalf, after denying that he was drinking, said that the Wilson woman came to his place of business about the time he was fixing to close up and go home. That when he opened the front door for the purpose of going out she obstructed his passage and also pulled him back into the house. That she then said, "You are not going home," and also said she was going to kill him and then kill herself, at the same time firing two shots from a pistol that she had in her hand, the shots entering the wall of the room several feet above the floor. That when the two shots were fired he went to her and while he was engaged in an effort to get the pistol away from her she struck her foot against the end of the table and fell to the floor. That while she was down she fired three other shots. He said that he did not at any time have any pistol in his hand nor did he shoot the woman. That all the shots were fired by her out of the pistol that she brought into the house.

On this evidence the theory of the Commonwealth was that Hunter either with his own pistol or the woman's pistol fired the shots that killed her. On the other hand, the theory of counsel for Hunter was that the woman killed herself with her own pistol either accidentally or purposely.

The court instructed the jury in the usual form on the subjects of murder, manslaughter, reasonable doubt and self-defense, but did not give any instruction on the subjects of the accidental or intentional shooting of Rena Wilson by herself, and the failure to so instruct the jury is the chief ground for reversal relied on.

Under the instructions the jury could not have convicted Hunter unless they believed beyond a reasonable doubt that he fired the shots that caused her death. If her death was not produced by the shots fired by him,

the jury must have acquitted him or else disregarded the plain direction of the instructions. It is, of course, apparent that the issue submitted to the jury was, did or did not Hunter kill the woman? Upon this subject the only direct evidence in the case, which was contained in the evidence of Hunter and an affidavit as to the evidence an absent witness, John Bader, would have given, was that Hunter did not fire either of the shots that killed Rena Wilson, but all of the circumstances developed in the case indicate and all of the reasonable and natural inferences from the evidence tend to show that he did shoot and kill her. The evidence of the Hesters that the woman, after two shots had been fired, fell out of the front door of Hunter's business house and was forcibly taken back into the house by him, after which three other shots were fired; his conversation with and conduct toward the police officer, as well as the location of the wounds in the head and back of the deceased, furnish convincing circumstantial evidence of Hunter's guilt. So that we do not feel any doubt that the verdict of the jury was justified by the evidence and tempered with much mercy.

But notwithstanding this, if the court failed to give to the jury instructions to which Hunter was entitled, and the failure to give these instructions prejudiced his substantial rights, the judgment should be set aside and a new trial granted, because every person accused of crime has a right to have the jury furnished, for their guidance, with instructions that contain the whole law of the case.

In Howard v. Com.; 26 Ky. L. R., 465, the defense was that the shooting and wounding by the accused was accidental and not intentional, and under this affirmative defense it was held that the jury should have been instructed to acquit the defendant if they believed the shooting was accidental. To the same effect are Taylor v. Com., 28 Ky. L. R., 819; Blanton v. Com., 31 Ky. L. R., 800; Hawkins v. Com., 142 Ky. 188. In these cases it will be observed that the defendant admitted the shooting but sought to excuse himself on the ground that it was accidental but not intentional. In the case we have the defense that Hunter made was that he did not shoot or kill the woman. If he did not shoot or kill her, he was not guilty, no matter how her death was produced

or whether it was caused by accident or intention on her part.

It was of course admissible under the plea of not guilty for Hunter to introduce evidence as to what produced the death of Rena Wilson and to show by evidence that it was caused by her act, accidentally or purposely committed. But, while evidence of this kind was admissible for the purpose of illustrating the innocence of Hunter, it was not essential to his defense that the jury should have been instructed on the subject, because his defense in all of its aspects was presented in an instruction telling the jury that they could not convict him unless they believed that he did the shooting and killing.

When the defense in homicide cases is that the accused killed the deceased but under circumstances that would excuse or justify the killing, as for example by accident or in self-defense, and the Commonwealth contends that the killing was committed under circumstances that showed the accused to be guilty, an instruction presenting the defense relied on should be given, for the obvious reason that unless such an instruction were given the theory of the defense would not be submitted at all. But when the defense is that the accused had nothing to do with the killing, and he undertakes to show that the act was committed by some other person or that the deceased killed himself, an instruction telling the jury that he cannot be found guilty unless he did the killing, presents the only defense the accused has. When such a defense is made, there is only one issue in the case to be illustrated by the evidence or submitted by instructions and that is, did the accused kill the deceased? If he did not, of course, he should be found not guilty.

In Minniard v. Com., 158 Ky. 210, there was evidence tending to show that the death of the deceased was not caused by the accused but by accidental means with which the accused had no connection, and it was insisted that an instruction, telling the jury that they should acquit the accused if they believed that the death of the defendant was produced by accidental means, should have been given. But the court said, "In this case there was no testimony on the part of the defendant that he killed Bowman but that the killing was accidental. . . .

Under the instructions given by the court a conviction was not authorized unless the jury believed from the evidence beyond a reasonable doubt that defendant killed deceased. Unless they so believed, they were required to acquit. While the evidence in regard to accidental death was competent as tending to show that defendant did not kill deceased, yet we conclude that it was not error to refuse a separate instruction covering this phase of the case, in view of the fact that the real issue was whether the defendant did or did not kill the deceased, and this was presented to the jury by instructions which are not subject to complaint.''

In Lewis v. Com., 19 Ky. L. R. 1139, relied on by counsel for Hunter, it appears that Lewis was indicted for the murder of his wife, committed by killing her with a club or some other hard substance. Apparently it was conceded that Lewis struck his wife, but his defense was that she died from arsenical poisoning, the poison being administered by herself or some other person besides Lewis, and under these facts the court said that an instruction should have been given, telling the jury that if they believed the deceased died from the effect of arsenical poisoning, the poison either being taken by herself or given by some other person than Lewis, they should find the defendant not guilty.

But that case cannot be regarded as in conflict with the rule announced in the Minniard case which we approve, and is not authority for the contention that under the facts of this case an instruction should have been given advising the jury that if they believed Rena Wilson came to her death from wounds inflicted by herself, either accidentally or intentionally, they should find Hunter not guilty.

It is next insisted that the court erred in failing to instruct the jury on the subject of involuntary manslaughter. There was no fact or circumstance in this case that would justify an instruction on this subject. The whole defense of Hunter was predicated on a theory having no relation to the law of involuntary manslaughter, which is the killing of another in doing some unlawful act but without intention to kill, or an accidental killing: Lewis v. Com., 140 Ky. 652; Long v. Com., 112 S. W. 841.

It is finally urged that the court erred in overruling the motion of Hunter for a continuance. This motion

was based on the absence of John Bader, a witness for Hunter, and also on the fact that Hunter was in such ill health as not to be able to properly advise with his counsel or give to the trial such attention as was needed.

The indictment was returned on January 5, 1916, and on January 7th Hunter was admitted to bail. On January 12th the case was called for trial and continued on the motion of Hunter by his counsel until the May term of the court, at which time it was again continued on motion of Hunter by his counsel to the September term, when the trial was had. It is a curious but not very material circumstance that may be noticed in this connection that although Hunter says Bader was an eye-witness to the killing, he was not recognized to appear as a witness when the case was continued at the January term, although several other witnesses for Hunter were. Nor does the name of Bader appear among the witnesses on account of whose absence at this January term a continuance was granted. At the September term, however, Hunter filed an affidavit asking a continuance on account of the absence of Bader, averring that if present he would testify to certain material facts which are set out in the affidavit of Hunter. This affidavit was permitted to be read as the deposition of the absent witness, Bader, and we are not prepared to say under the circumstances shown in the record that the trial judge abused his discretion in refusing to continue the case on account of the absence of this witness.

Nor do the facts set out in the affidavit as to the condition of Hunter's health show that the court committed an abuse of discretion in refusing a continuance on this ground. Hunter, although complaining of injuries sustained some time previous to the trial, was present in the court, and from his evidence it appears that he was able to relate every fact and circumstance that he thought would be helpful in his defense.

A careful consideration of the record has satisfied us that no error prejudicial to the substantial rights of Hunter was committed, and therefore the judgment is affirmed.