## Burnett v. Commonwealth.

(Decided November 24, 1916.) ·

### Appeal from Whitley Circuit Court.

1. Homicide — Dying Declaration — Competency. — The question whether statements made by a deceased are competent as a dying declaration is wholly for the court, and all preliminary proceedings necessary to enable the court to pass upon that question should be heard apart from the jury.

2. Homicide—Dying Declaration—Competency.—It is not · necessary that the deceased should have expressly declared the belief that he was going to die or that he could not recover to make his statements competent as a dying declaration; his state of mind may be shown as well by circumstances and surroundings.

3. Homicide — Dying Declaration — Competency.—Where deceased had been informed by the doctor that she had but a short time to live, and after being so informed said she was sorry to die and leave her child, her statements thereafter made were competent as a dying declaration.

4. Criminal Law—Evidence.—When two crimes are simultaneously committed or are so intimately connected with each other as to time and locality that they are inseparable, if one is on trial charged with one of them, evidence as to both must be admitted.

5. Criminal Law—Setting Aside Indictment—Exception.—The action of the trial court upon motion to set aside an indictment is not subject to exception, and cannot be reviewed by this court.

6. Homicide—Indictment and Information—Sufficiency.—An indictment charging the defendant with the crime of wilful murder in that he unlawfully, maliciously, feloniously and with malice aforethought killed and murdered the deceased by shooting, etc., is sufficient.

7. Homicide—Indictment and Information—Sufficiency.—It is not essential that the word "wilful" should be in such an indictment.

8 Homicide—Reducing Charge to Voluntary Manslaughter.—It is only necessary to reduce the charge of murder to that of volun-

tary manslaughter if the killing is done in sudden heat and passion or in sudden affray.

9. Criminal Law—Instruction on Self Defense.—An instruction on self defense, which required the jury to believe before the defendant might be acquitted on that ground, not only that he at the time believed it to be necessary to kill deceased to protect himself from death or great bodily harm, but that such necessity actually existed, was erroneous.

10. Criminal Law—Instruction on Self Defense.—An instruction which told the jury in substance that the defendant could not rely upon the plea of self defense if they should believe from the evidence beyond a reasonable doubt that he participated in and brought on the difficulty, was erroneous; such an instruction is too general and fails to indicate or define how the defendant brought on the difficulty, and leaves to the jury, rather than to the defendant, the question whether or not they believed that the deceased was about to inflict harm upon him.

HENRY C. GILLIS and B. B. SNYDER for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellant was indicted in the Whitley Circuit Court charged with the murder of his wife, Bertha Burnett. On his trial he was found guilty and sentenced to confinement in the penitentiary for life, and from that judgment he has appealed.

Appellant was about twenty-seven or twenty-eight years of age, and had been twice married. By his first wife he had three children and was then divorced from her. By his last wife he had one child, an infant about eighteen months of age at the time of the homicide. He and his wife and this infant were living in a small house near Savoy in Whitley County where he was employed as a section hand on a railroad.

On one Sunday morning in February, 1916, after eating breakfast at home he went to the station at Savoy where he met some friends and acquaintances. During the morning a train came in which brought to some of his friends a consignment of liquor, and appellant participated in the consumption of at least a part of it, but exactly to what extent he imbibed is not disclosed. About the time he was ready to go home his first wife's

brother, Willie Thomas, was seen approaching the station, and appellant remarked that he knew that Thomas also had some liquor in the office, for he had seen it the night before and that he would get something more to drink. Thomas came up and there was a package of liquor in the office for him and appellant did take at least one drink out of Thomas' bottle. Thereafter as appellant started towards his home, his brother-in-law Thomas went with him to a point near or opposite the Burnett home, and in sight of the front porch where appellant's wife was standing.

Appellant had some talk with Thomas, his brother-in-law, about his three children by his first marriage and was informed by Thomas that one of the little girls needed a pair of shoes which appellant promised to send to her shortly. Appellant left Thomas near his home, and shortly after he reached his home several shots were heard therein, and when the neighbors reached there his wife was lying in the kitchen mortally wounded by the fire from a shotgun, and appellant was wounded by two pistol shots, one in each shoulder. The woman lingered only a few hours and died. Appellant, his wife and the eighteen months old child were the only eye-witnesses to the tragedy.

The grounds relied on for reversal are: (1) That the statement of the deceased was incompetent as a dying declaration; (2) that the evidence of pregnancy of deceased was incompetent; (3) that his motion to quash the indictment should have been sustained because one of the members of the grand jury had served on the regular panel of the circuit court within twelve months; (4) that the indictment is fatally defective because it does not charge that the defendant "willfully" killed the deceased; and, (5) the court erred in the instructions to the jury.

Early in the trial the question arose as to what were the circumstances under which the decedent made the statements which were relied upon as a dying declaration, it being the contention of the Commonwealth that they were made subsequent to a statement by the doctor to her that she had but a few hours to live, and after she had said that she was sorry to have to die and leave her child; and it is being contended by the defendant that the statements relied upon were made by her before the doctor informed her that she had only a short

time to live and at a time when she had no consciousness of impending death.

The evidence shows that when the neighbors first reached the house she said that if they did not get a doctor soon she would die, but that thereafter she expressed the opinion that she would be all right if they would let her sleep for a half an hour. It is the claim of appellant that she only made or undertook to make two statements detailing the facts of the tragedy and that each of these statements was made by her *before* the doctor informed her that she had but a few hours to live and when she believed she would get well, and that, therefore, neither of them was competent as a dying declaration. On the other hand it is contended by the Commonwealth that she made three such statements, two before the doctor told her of her condition and one thereafter.

Confronted with this situation the trial court sent the jury out and heard the evidence on this disputed point, and after hearing it was satisfied that the third statement was made *after* the doctor had informed her of her condition and admitted it in evidence, but excluded all statements theretofore made by the decedent.

This procedure was entirely proper; the question whether statements are competent as a dying declaration is wholly for the court, and all preliminary proceedings necessary to enable the court to pass upon that question should be heard by the court separate and apart from the jury. As said by this court in Wilson v. Commonwealth, 141 Ky. 341:

"In determining whether evidence of a dying declaration is competent, it is undoubtedly the safer practice for the court to hear it in advance of its introduction before the jury and in their absence, in order that they may get no impression from it that would be prejudicial to the defendant, if the court should rule it incompetent and reject it."

This practice has long been recognized and followed in this State. Coyle v. Commonwealth, 122 Ky. 781; Allen v. Commonwealth, 134 Ky. 110; Commonwealth v. Johnson, 158 Ky. 579.

The statement made by the decedent after being informed by the doctor that she had only a short time to live was, in substance, that her husband went off that morning and came back drunk and was mad about something, but that she did not know what, and began to

beat and abuse her and went to his pocket to get his pistol, and that they got into a scuffle and she got the pistol away from him, and that he then went and got the shotgun and shot her and that after she was shot she shot him twice with the pistol.

But it is the contention of appellant that even this third statement, made under the conditions above recited, does not bring it within the rule making it competent as a dying declaration; that it was not made under such consciousness of impending dissolution, or certainty of death, when every motive to falsify had been removed; that the circumstances were not such as to dispense with the customary oath.

It is, however, a well recognized rule in this State that it is not necessary that the decedent should have expressly declared the belief that he was going to die or that he could not recover; his state of mind may be shown as well by circumstances and surroundings. In this case not only had the victim been shot in the left side with a shotgun, but she had been informed by one doctor in the presence of other doctors that she had but a short time to live, and after being so informed she said she was sorry to die and leave her child. No reasonable interpretation can be given to her statement that she was sorry to die and leave her child except that she fully realized her situation. In Allen v. Commonwealth, 168 Ky. 337, the admissibility of certain statements as a dying statement was in question, and the court said:

"He did not say in words that he was going to die or that he would not recover, nor did any one tell him that his wounds were fatal or that he had only a short time to live; but he did say several times and to more than one person that 'he was going to die,' that 'he was killed,' that 'they killed him;' and there being no facts or circumstances tending to controvert this certainty of impending death, his dying declaration was properly admitted."

Likewise in Eversole v. Commonwealth, 157 Ky. 483, where a similar question was involved, the court said:

"To make such a statement as that coming from the deceased, admissible as a dying declaration, it must be made when the party is *in extremis* and has given up all hope of this life; but whether this be so or not, may be determined, not only by what he may say, but

by his evident danger and by all the surrounding circumstances. The injured party need not in express words declare that he knows he is about to die or make use of equivalent language.''

In Begley v. Commonwealth, 154 Ky. 30, almost the precise question which we have in this case was determined. There the decedent had been informed by his physician that he could not get well, and he said he hated to die on account of his children, and the court held that statements made under these conditions were competent as a dying declaration.

The appellant's version of what happened at the house is that when he returned his wife was angry and jealous because she had seen him talking with his former wife's brother, and told him she was going to kill him and then herself; that she took the pistol from the table where he laid it and shot him twice; that he fell after the second shot near where the shotgun was; that she shot at him while he was down, and he then managed to reach the shotgun and shot her, and that she thereafter shot at him twice.

At the beginning of the trial the appellant entered a written motion, signed by his attorneys, wherein it was admitted that he shot Bertha Burnett, from which shooting she died, and consented that the court might instruct the jury to that effect, and entered a motion to exclude any and all evidence, statements and arguments upon the part of the Commonwealth to the effect that said Bertha Burnett was at the time of the homicide pregnant, or that her unborn child was killed by such shooting. This motion does not seem to have been acted upon, but the trial proceeded as if it had not been made.

Manifestly it was the purpose to keep from the jury any reference to the fact that the defendant had killed his infant child at the same time he killed his wife. This was a most novel procedure, and one which we have never before known to have been resorted to; and, while we are inclined to praise the ingenuity of counsel, we cannot uphold this method of withholding from the jury all the facts and circumstances surrounding the commission of a crime. It has always been the rule that when two crimes are simultaneously committed, or are so connected with each other as to time and locality as that they are inseparable, if one is on trial charged with one of them, evidence as to both must be admitted.

The physical and mental condition of the parties and all circumstances surrounding them at the time were necessarily competent on the trial of this case.

The complaint of appellant that the court erred in refusing to quash the indictment because there was a member of the grand jury who had served as a juror within twelve months is without merit. It has many times been held by this court that under the provisions of section 281 of the Criminal Code the action of the trial court upon motion to set aside an indictment is not subject to exception and cannot therefore be reviewed by this court. Jenkins v. Commonwealth, 167 Ky. 550.

Not only so, but it is expressly provided in section 2248, Kentucky Statutes, that the fact that one not qualified or competent to serve on a grand jury acts as such shall not be cause for setting aside indictments found by such grand jury.

The contention that the indictment was insufficient because it did not charge that appellant had "willfully" killed the deceased is likewise ultra technical and without merit. The indictment charges appellant with the crime of "willful murder" in that he did unlawfully, maliciously, feloniously and of his malice aforethought kill and murder Bertha Burnett by shooting her, &c.; so that even if it were necessary that the word "willful" should have been in the indictment we find it there. But it is no more essential that the word "willful" should be in such an indictment than that the word "unlawfully" should, and it has frequently been held that the latter word is unnecessary in such an indictment. Overstreet v. Commonwealth, 147 Ky. 471; Greer v. Commonwealth, 164 Ky. 396, and Clark v. Commonwealth, 165 Ky. 472.

But we find the instructions fatally defective in at least two respects.

In the first place the first and second instructions use the word "and" in two or three places where the word "or" should have been used; they, in effect, tell the jury that in order to find the defendant guilty of voluntary manslaughter they must believe the killing was done in sudden heat and passion "and" sudden affray, thereby making it necessary to reduce the crime to manslaughter that the jury should believe, not only that the killing was done in sudden heat and passion,

but that there also must have been a sudden affray, when in fact the correct rule is that if it is either done in sudden heat and passion *or* in a sudden affray the crime is reduced to manslaughter.

Likewise in the instruction on self defense the jury was required to believe before the defendant might be acquitted on that ground, not only that the defendant at the time believed it to be necessary to kill deceased to protect himself from death or great bodily harm, but that such necessity actually existed.

Clearly in this respect the two instructions named were erroneous, and on another trial the court will frame these instructions as indicated in the recent case of Taylor vs. Commonwealth, 172 Ky. 136.

In qualifying the self defense instruction the court said to the jury in substance that the defendant could not rely upon that plea if the jury should believe from the evidence beyond a reasonable doubt that he "precipitated and brought on the difficulty and fight." This instruction in this form has often been condemned by this court because the language is held to be too general and fails to indicate or define how the defendant brought on the difficulty and leaves to the jury, rather than to the defendant, the question whether or not they believed that the deceased was about to inflict harm upon the defendant.

In Hacker v. Commonwealth, 158 Ky. 783, this question was considered at length and the authorities reviewed, and on another trial the instruction will be made to conform to the views therein expressed.

For the reasons indicated the judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.