## Commonwealth v. Harris.

(Decided November 8, 1917.)

### Appeal from Shelby Circuit Court.

1. Homicide—Dying Declarations—Competency.—Whether or not a statement as to the manner of his receiving a wound inflicted upon his person by another, made by one whose death resulted from such wound, is competent as a dying declaration, is a question for the trial court to determine from the facts and circumstances of the particular case. To make a dying declaration com-

petent as evidence, it must be made when the declarant is in extremis and has given up all hope of recovery. But whether this be so or not may be determined, not only by what he may say, but by his evident danger and by all the surrounding circumstances. The injured party, however, need not in express words declare that he knows he is about to die.

2. ` Homicide—Dying Declarations—Competency.—A statement from the deceased as to the manner in which he had been stabbed by the defendant, made to his father twenty-one days before his death of the wound, was properly held by the trial court incompetent as a dying declaration, where it was conclusively made to appear from the evidence as a whole, that the deceased had never been advised the wound would cause his death, and had not himself declared it to be his belief that he would not recover.

3.    Criminal Law—Evidence—Anti-Sweating Act.—Statements of one charged with crime of the facts connected with its commission, made to a policeman, following his arrest by the officer and while in his custody, may be proved by the testimony of the latter, provided that it clearly be made to appear from the evidence as a whole that the statements. were made of the defendant's free will and accord with full knowledge on his part of their nature and consequences. Nor will the fact that such statements were made in response to questions from the officer, render proof of them by the latter incompetent, if the questions were neither so importunate nor coercive as to violate the statute known as the "Anti-Sweating Act."

CHARLES H. MORRIS, Attorney General, and CHARLES H. SANFORD for appellant.

BEARD & PICKETT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Certifying the law.

The appellee, Iona Harris, was tried in the Shelby circuit court under an indictment charging him with the crime of murder, committed by taking the life of one Everett Ferguson. The trial resulted in a failure upon the part of the jury to agree. Consequently, no verdict was returned by them. The Commonwealth's attorney, being aggrieved at certain rulings made by the circuit court on the trial of the case, to which exceptions were taken at the time, prosecutes this appeal as allowed by section 335, Criminal Code, for the purpose of having this court pass upon those rulings, and to certify its conclusions of law thereon to the lower court for its guidance upon another trial of the case.

The first ruling complained of is as to the refusal of the trial court to admit in evidence certain statements

of Ferguson, the deceased, attempted to be introduced by the Commonwealth as a dying declaration. It appears from the bill of evidence that in a difficulty growing out of a game of cards, to which appellee and the deceased were the only eyewitnesses and participants, the latter was cut by the former with a pocket knife, the wound being a stab in the abdomen, which penetrated the cavity and cut the traverse colon or large intestine. The deceased was taken to his father's residence, where his wound was examined by two physicians, who decided that an immediate operation would have to be performed to save his life. The physicians, about two hours later, caused him to be removed to a hospital, where the operation was successfully performed. According to the testimony of the physicians, Drs. Hawkins and Beard, the wound seemed to heal rapidly and naturally, and fifteen or twenty days after the operation, deceased had so improved as to be able to leave his bed and walk around in the hospital. On the twenty-first day, however, owing to the formation of a clot or coagulation of blood from the wound, that, in passing through the circulatory system, obstructed the vessels that supply the respiratory centers of the brain, he suddenly became worse, and on that day died, while being attended by Dr. Hawkins.

The statement from him sought to be introduced as a dying declaration was made as claimed to his father, Henry Ferguson, alone, at the latter's residence, and during the two or three hours intervening between the infliction of the wound and the deceased's removal to the hospital for the operation. As appears from the avowal in the record, the statement made by deceased to his father was as follows:

"That he was in a crap game with Iona Harris in a room in Mrs. Place's house in Shelbyville that evening or afternoon; that Iona won the money and he tried to make Iona give it up; that he refused to give it up, went into another room and fastened the door, and when he came back he had a knife in his hand and then cut him; that he, Everett (Ferguson), had nothing in his hand at the time he was cut, and was not doing anything or making any effort to do anything to Harris and that Harris cut him when he wasn't doing anything to him."

With respect to the physical and mental condition of the deceased at the time of making the statement contained in the above avowal, the father said he was suffering greatly from the wound, and that he said to him, "Pap, I feel like I am not going to get over it"; he said

it was very painful inside; he said he didn't feel like he was going to get over it.''

Both Drs. Hawkins and Beard testified that although they informed deceased of the necessity for the operation, they did not tell him of the dangerous character of the wound, or advise him that an operation would afford the only chance of a recovery; nor did they say anything to him as to the probability of his dying from the wound; but, on the contrary, purposely refrained from giving him such information, because they feared it would produce in his mind such a shock as might cause his death. They further testified that no statement or intimation was made to them by deceased indicating a belief that he expected to die from the wound or would not recover from it.

We do not think the circumstances attending the statements attributed to deceased by the avowal, as shown by the evidence, were sufficient to authorize their admission as a dying declaration. His previous statement, ''Pap, I feel like I am not going to get over it,'' and ''that it was very painful inside,'' do not of themselves indicate such a realization of the dangerous character of his wound or his belief in the certainty or imminence of death, as to show the entire absence of hope of recovery. One may believe that a wound or other bodily injury is of such a character as to prevent a complete recovery from the effects of it, without at the same time entertaining the belief that it would result in his death. The language is as susceptible of the meaning that the wound was regarded by deceased as one that would cause only permanent impairment of his strength or usefulness, as that he believed it would result in his death. In other words, the statements were not so positive as to clearly indicate that the declarant was without hope of recovery. The language merely indicates that his feeling at the time was that he would not get over it, not that it would cause his death. Moreover, he had not been told by the physicians or even by his father that he would not recover, or that the wound was necessarily or even probably fatal. In point of fact, he lived twenty-one days after these statements and those contained in the avowal, alleged to have been uttered by him, were made.

In Cavanaugh v. Commonwealth, 172 Ky. 799, we said, quoting with approval from Peoples v. Commonwealth, 87 Ky. 487:

"The law does not require as a condition to the competency of the statement as a dying declaration that the injured party shall, in express words, declare that he knows he is about to die, or that he shall make use of equivalent language. His recognition of impending dissolution may be shown in this way, but the law does not limit it to this mode alone."

Perhaps the most recent case, presenting this question, that we have had before us is that of Postell v. Commonwealth, 174 Ky. 272, in which many of the cases bearing upon it were reviewed. In the opinion we said:

"The question has been before this court a great number of times, and it is recognized in all of the cases that whether or not the circumstances are sufficient to admit the statement as a dying declaration is not only a question for the court, but is to be determined from the facts and circumstances of each case. Many of the cases hold that the declarant need not say in express terms, or in substance, 'I believe, or I know, that I am going to die.' If what he says, coupled with his condition, the nature and extent of the wound, the rapidity with which death follows, and other circumstances are sufficiently convincing that the declarant is confronted with the specter of death, his statements made at such time are admissible as his dying declaration. We are fully aware, also, as was stated in the case of Baker v. Commonwealth, 106 Ky. 216, that this character of evidence is a species of hearsay testimony, and liable to great abuse and should be received with great caution, and as was also held in that case, the declarant should believe himself beyond the probabilities of recovery. There are almost numberless cases from this court holding to the same rules, to which it is unnecessary to refer or discuss in this opinion. The cases chiefly relied on as authority against the admission of the statement are those of Mathedy v. Commonwealth, 14 R. 184; Starr v. Commonwealth, 97 Ky. 193; Coyle v. Commonwealth, 122 Ky. 781, and Commonwealth v. Johnson, 158 Ky. 582."

On the other hand, it will be found that in the following cases such evidence was admitted as competent: Peoples v. Commonwealth, 87 Ky. 487; McHargess v. Commonwealth, 15 R. 324; Commonwealth v. Matthews, 89 Ky. 287; Eversole v. Commonwealth, 157 Ky. 487; Farley v. Commonwealth, 165 Ky. 600; and Cavanaugh v. Commonwealth, 172 Ky. 799.

Applying to the evidence in this case the rules announced by the authorities, *supra*, for testing its admis-

sibility, we are not convinced that the alleged dying declaration was made under a sense of impending death, or when the deceased was without expectation or hope of recovery. Therefore, its exclusion by the trial court was not error.

We have not considered the ruling of the court in excluding certain questions asked Dr. Hawkins by the Commonwealth's attorney, with a view of obtaining from him proof of some kind of a statement made to him by deceased, claimed to have been a dying declaration, because the record fails to contain any avowal as to what was said by the deceased to the witness.

The second and only other ruling of the trial court complained of by the Commonwealth was the rejection of so much of the testimony of Henry Harris, policeman, as related to certain statements of appellee made following his arrest by that officer, purporting to give the particulars of his difficulty with and wounding of deceased. The testimony in question was excluded because, in the opinion of the court, it was obtained under such circumstances as violated the statute known as the "Anti-Sweating Act." This is not made to appear by the testimony of the officer. It is true that he said the statements were made by appellee in response to a question or questions from him, but it is apparent from his testimony, and that of appellee as well, that the statements were made of the free will and accord of the latter, without coercion, threat of harm, or promise or inducement of reward. The act in question was first construed and applied by us in the case of Commonwealth v. McClanahan, 153 Ky. 412, in which we held that while the sweating prohibited by the act may be done by the mere questioning of the person under arrest charged with or suspected of crime, if such questioning be done for the purpose and with the effect of extorting from him (i. e., inducing an involuntary or unwilling giving) of information to be used against him on his trial for the crime alleged, yet that evidence of a confession, even when made to an arresting or other peace officer, by a person under arrest charged with crime, is admissible when voluntarily made; but it should clearly be made to appear that it came from the defendant under such circumstances as show it to have been made of his free will and accord, with full and perfect knowledge of its nature and consequences, free from the dictation, coercion or inducement of others. It is apparent from what was testified both by the officer and the appellee that the

statements elicited from the latter were not improperly or persistently urged by the officer, but that they were made by appellee of his free will and with full and perfect knowledge of their nature and the consequences of his making the statements. In the opinion of the case, *supra,* we pointed out the evils intended to be corrected by the statute, defined what would amount to coercion or "sweating" in the meaning thereof, and in concluding the opinion said:

"We do not mean to hold that a voluntary confession may not be made by one charged with crime and under arrest, for such confessions have often been admitted and will yet be admitted by the courts as competent, but it should come from the defendant under such circumstances as show it to be made of his free will and with full and perfect knowledge of its nature and consequences, free from the dictation or coercion of others."

We find from a comparison of the testimony given by appellee and that of the officer no material contradiction.

It is our conclusion, therefore, that the exclusion by the trial court of the testimony given by the officer as to these statements of the appellee was error.

For the reasons indicated, the ruling of the circuit court in excluding the alleged dying declaration of the deceased is approved, and the ruling excluding the testimony of Harris, the police officer, as to the statements made to him by the appellee, is disapproved. Wherefore this opinion is certified to that court as the law of the case.