## Dunbar v. Commonwealth.

(Decided June 24, 1921.)

### Appeal from Calloway Circuit Court.

1. Criminal Law—Confessions.—Where a confession made out of court is accompanied with other proof that such an offense has been committed, i. e., with proof of the corpus delicti, it will warrant a conviction. It is not necessary that the corroborative testimony should tend to connect the accused with the commission of the offense.

2. Criminal Law—Confessions.—Where it is doubtful whether, in fact, a crime has been committed, the jury should be told, substantially in the language of the Criminal Code, section 240, that an alleged confession of guilt by the defendant will not warrant a conviction unless accompanied with other proof that such a crime has been committed. But when, independent of the confession or admission of the defendant, there is evidence proving the corpus delicti beyond a reasonable doubt, the giving of such instruction concerning the weight to be given confessions is unnecessary.

3. Burglary—Confessions.—On the trial of an accused indicted under Ky. Stats., sec. 1162, for feloniously stealing, carrying away from a courthouse and converting to his own use property of value owned by the county, testimony offered through a witness introduced in his behalf that a person other than the defendant had told her the stolen property was taken by him from the courthouse and given the defendant, being incompetent, was properly excluded by the trial court.

4. Criminal Law—Submission to Jury.—Evidence examined and held sufficient to requre submission of the case to the jury, and, also, to support the verdict of the jury finding the defendant guilty.

WEAKS & HOOD and RAINEY T. WELLS for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Albert Dunbar, was indicted in the court below under Kentucky Statutes, section 1162, for feloniously stealing and taking from the ladies' waiting room of the Calloway county courthouse and appropriating to his own use a mirror of value, the property of the county. Appellant's trial under the indictment resulted in a verdict from the jury finding him guilty and fixing his punishment at confinement for two years in the penitentiary. He was refused a new trial and has appealed from the judgment entered on the verdict.

The grounds urged for a new trial in the court below are also relied on by appellant for a reversal of the judgment of conviction, the first of which is that the verdict was flagrantly against the evidence. A statement of the salient facts established by the evidence will show the lack of merit in this contention. They, in brief, are that the theft of the mirror was discovered the day it was removed from the waiting room of the courthouse and appellant was proved to have been, and admittedly was, in Murray, the county seat, that day. Four days after the theft of the mirror was discovered, Outland, the jailer of the county and custodian of the courthouse and furniture, was informed by one Albert Martin, a former inmate of the jail and "trusty" about the courthouse, that he had seen the stolen mirror at the home of Frank Dunbar, appellant's father, or been told that it had been taken there by appellant. Upon receiving this information the jailer, accompanied by Orr, a deputy sheriff, and another person, went to Frank Dunbar's home, three miles in the country, and there found the mirror. Frank said it had been brought there four days previously by appellant, who lived with him. The appellant being present voluntarily stated that he had taken the mirror from the courthouse on the previous Thursday and carried it to his father's, as stated by the latter. After making this confession of his guilt, appellant was placed under arrest by the jailer and deputy sheriff and at once taken to Murray and put in jail. On the following morning in a conversation with the jailer appellant retracted his confession of guilt of the day before and claimed that the mirror had been delivered to him in Murray on the day it was stolen by Albert Martin with the request that he take it to his house and keep it until

called for by Martin, and also that he say nothing of Martin's giving him the mirror. Appellant in testifying on his trial reaffirmed these statements. The explanation he gave of his contradictory statements was that his confession of guilt of the theft was caused by his promise and willingness to shield Martin, but that when told the day after his arrest that the stealing of the mirror was a penitentiary offense he became alarmed for his own safety and told how and when he became possessed of the mirror. He claimed to have been with one Homer Adams when Martin gave him the mirror, and in the absence of the latter, whose attendance as a witness he claimed he was unable to procure, he was permitted to read to the jury as Adams' deposition his own affidavit containing what he said Adams would testify if present, which alleged testimony was corroborative of his own as to receiving the mirror from Martin. The only other evidence introduced in his behalf was that given by a Mrs. Gardner, who testified that Martin told her he had taken the mirror and given it to appellant, the statements having previously been denied by Martin on cross-examination when introduced by the Commonwealth in rebuttal.

It is not claimed by appellant that his confession of guilt to the jailer, deputy sheriff and their companion was not voluntarily made, or that it was superinduced by his arrest or by coercion, undue persuasion from the officers or other illegal means; and as no objection was made to the proof the confession on the trial, and none is now urged to it, its competency will not be questioned by us. Comlth. v. Harris, 177 Ky. 607. Martin upon being introduced in rebuttal for the Commonwealth denied the taking of the mirror or that he gave it to appellant, and said he only knew of the latter's possession of it by seeing it at his father's house and his admission of having taken it from the courthouse.

It is patent from this evidence that the case should have gone to the jury, and equally patent that there is no ground for appellant's contention that the verdict is flagrantly against the evidence. It was the province of the jury to weigh the evidence and to determine which of the contradictory statements of appellant was true; and the voluntary confession of his guilt made by the appellant, if believed by the jury to be true, together with his possession of the mirror and the uncontradict-

ed proof of its having been stolen, furnished evidence amply sufficient to authorize the verdict. It must be admitted too that the reason given by appellant for repudiating his confession of guilt was unusual and highly improbable. Obviously, in such a state of case as is here presented by the record, the verdict should not be disturbed on the ground that it is flagrantly against the evidence. Perry v. Comlth., 181 Ky. 396; Bennett v. Comlth., 150 Ky. 604; Polly v. Comlth., 171 Ky. 307.

Appellant's complaint of the ruling of the trial court in excluding evidence offered in his behalf cannot be sustained. The excluded evidence was attempted to be obtained from Mariah Guthrie and was, as avowed, to the effect that Albert Martin came to her house on the day the mirror was stolen and asked her as to the whereabouts of appellant, saying he had a mirror he wished him to take home with him and keep until he called for it. The object of this testimony was to contradict and discredit Martin, upon whom appellant was seeking to fasten the theft of the mirror; but to obtain the benefit of the testimony of Mariah Guthrie it was necessary to lay a foundation for its admission by first obtaining of Martin a denial that he made to her the statements referred to; and as Martin had not then been introduced as a witness by the Commonwealth and had not denied the statements or been asked about them, proof of them by the appellant's witness, Mariah Guthrie, when and as offered, was and would have been clearly incompetent, hence the exclusion of her testimony was not error. It appears from the record, however, that after appellant's evidence had been concluded and Martin introduced by the Commonwealth in rebuttal, he denied making to Mariah Guthrie the statements attributed to him by appellant's avowal as to what she would testify on that subject, but as she was not thereafter recalled as a witness or required to testify, his denials referred to were never contradicted by her.

While no objection is made by appellant to the instructions as given by the trial court, he complains that the instructions did not give for the guidance of the jury the whole law of the case, and insists that the failure of the court to give another instruction substantially in the language of section 240, Criminal Code, was reversible error. That section provides:

"A confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such an offense was committed."

The meaning given the section, *supra,* by numerous decisions of this court is admirably stated in Roberson's Criminal Procedure, vol. 2, sec. 963, as follows:

"Where a confession made out of court is accompanied with other proof that such an offense has been committed, that is, with proof of the *corpus delicti,* it will warrant a conviction. It it not necessary that the corroborative testimony should tend to connect the accused with the commission of the offense. . . . Where it is doubtful whether, in fact, a crime has been committed, the jury should be told that an alleged confession will not warrant a conviction unless accompanied with other proof that such a crime has been committed. But when, independent of the confessions or admissions of the defendant, there is evidence proving the *corpus deliciti* beyond a reasonable doubt, it is unnecessary to give an instruction concerning the weight to be given confessions." Patterson v. Comlth., 86 Ky. 313; Wigginton v. Comlth., 92 Ky. 282; Green v. Comlth., 26 R. 1221; Ratcliffe v. Comlth., 182 Ky. 257; Clay v. Comlth., 162 Ky. 55.

In the case at bar the *corpus deliciti* (*i. e.,* the fact that the crime alleged had actually been committed) was proved by the evidence beyond a reasonable doubt, independent of the confession of guilt made by the appellant out of court; therefore it was unnecessary for the trial court to give the additional instruction appellant insists should have been given, consequently its failure to do so was not prejudicial error.

Appellant's complaint of misconduct on the part of the court and jury did not entitle him to a new trial. The alleged misconduct of the jury arose, as claimed, out of their action in allowing a majority of their number to make a verdict and calling to their room, while considering their verdict, the judge of the court and asking his advice as to some means of finding Albert Martin as well as appellant guilty of stealing the mirror; the misconduct of the judge, as claimed, being in going to the room and advising the jury to see the Commonwealth's attorney about instituting a prosecution against Martin. Evidence of these alleged acts of judge and jury was attempted to be shown by an affidavit of the jailor, filed in support of appellant's motion and grounds for a new trial, in which it was stated that the affiant's

information of the acts and conduct referred to was obtained from a member of the jury, whose name was not disclosed, by the affidavit. The affidavit was clearly inadmissible as evidence for any purpose, and the court should not have permitted it to be filed. As evidence it was the rankest hearsay, and for that reason, if no other existed, incompetent. But if all the affidavit states were admitted to be true, the only thing it charges that could amount to misconduct on the part of the jury was their alleged agreement to let a majority control in arriving at a verdict, which was refuted by the unanimous verdict actually returned. The other acts of the court and jury set forth in the affidavit could, at most, have amounted to nothing more than mere irregularities, having no legal effect upon the verdict.

But, in addition to what has been said, we repeatedly have held that not even the affidavit or oral testimony of a juror will be received to impeach a verdict or impeach a fellow juror's conduct, but will be admitted in support of a verdict attempted to be impeached by other testimony. Brannon v. Com., 162 Ky. 350; Gleason v. Com., 145 Ky. 128; Howard v. Com., 24 R. 612. As under the rule, *supra*, the juror's alleged statements to the jailor contained in the affidavit of the latter would not, if furnished by such juror's affidavit or oral testimony, have been competent as evidence to impeach the verdict returned against appellant, it could not be made so by being offered through another as hearsay.

Being convinced by a careful consideration of the record that there was sufficient evidence to support the verdict, and that the rulings of the trial court are free of any reversible error, the judgment is affirmed.