## BURKE v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 6, 1952.

Luker & Tooms, London, Jim Lambert, Mt. Vernon, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

SIMS, Justice.

Appellant, Robert Burke, was tried for the murder of George William Cromer. He was convicted of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for 21 years. His motion for a new trial contains eight grounds, but only two are relied upon in his brief: 1. Incompetent evidence was admitted over his objection; 2. an erroneous instruction was given.

Appellant and deceased were brothers-in-law, Burke having married a sister of Cromer. Burke was 35 years of age and with his wife and five children lived across the road from Cromer, who was a bachelor some 24 or 25 years of age and resided in the home of his parents near Sand Hill in Rockcastle County. There had been no previous difficulty between these men or any members of the two families. There were two paths leading between the two homes, which homes were within "hollering distance" of each other. There was a cellar on the Burke place some distance from the house and over this cellar was a building with the door opening on one of the paths between the Burke and Cromer houses.

There was another path between the two homes which ran directly to the county road.

On September 21, 1950, Burke and Cromer went squirrel hunting. During the hunt Cromer acquired a pint of moonshine whiskey and the two men just before dark went by the home of Burke's father and picked up Burke's brother, Nath, and the three went to Burke's home, arriving about 7 o'clock and after dark. Before reaching his sister's house Cromer fired his gun at a bush. Burke's mother-in-law, Mrs. Cromer, was in his home when the three men arrived and they took a drink or two in the kitchen before Mrs. Cromer departed for her home with Burke's seven year old son, Billie Gene. While skinning a squirrel Burke asked his wife to wake him and his brother early the next morning as they were going squirrel hunting again. She replied that they would have to get themselves up. This angered her brother, who with a foul word said he would kick her out of the house even if she were his sister. Burke mildly remonstrated with his brother-in-law and the latter said he would whip Burke before he could get out of his chair, and the two men clinched. Mrs. Burke grabbed up her four remaining children and ran to the cellar.

In the fight the two men knocked over a kerosene lamp—the only light in the house—and Cromer, the larger and stronger of the two, got Burke down on a bed and was choking him. Burke drew a knife from his pocket and cut Cromer 23 times "anywhere I could, I was trying to get him off of me". After receiving the knife wounds Cromer released Burke and left the latter's house and started home by the path which passed the cellar, saying, "I'll go down and get your God damn boy".

Burke then took his shotgun from the unlighted house, went by the cellar where his wife was screaming and crying. He found his wife and the children with her unharmed, but he heard the boy, Billie Gene, crying at the home of his grandmother. His wife told him to go get the child before Cromer could hurt him. Burke testified he started to his mother-in-law's home and when he got in the county road he saw Cromer standing on a bank, who said, "I'm going to get you, you God damn son of a bitch and when I do that I'll get your kid." It was dark and raining and Burke could not see whether Cromer had a gun, but thought he had one; Burke backed up three or four steps, told Cromer not to come on him but Cromer kept advancing and he shot Cromer without bringing his gun to his shoulder just as "he was fixing to get hold of me". Cromer was shot through the heart, fell on his face, dying immediately. Nath, appellant's brother, took no part in the fight in the house or in the subsequent shooting.

It developed Cromer did not take his shotgun with him when he left the unlighted Burke home and he was unarmed when killed.

The mother of deceased testified she was in the road a few steps ahead of her son but did not see the shooting or hear any words between the two men. When the shot was fired she ran to her home for her husband, but he testified his wife was on the porch when the shot was fired. There was no eyewitness to the killing and Burke's testimony was not contradicted. However, the jury are not bound to believe an accused's testimony in the light of circumstances tending to discredit it. Jackson v. Com., 248 Ky. 47, 53 S.W.2d 263.

The undertaker, W. H. Cox, testified as to the location of the knife wounds on the body, none of which was serious; that the gunshot tore "the heart all to pieces" and passed completely through his body, which was powder burned. After he gave his testimony, the Commonwealth, through Cox, introduced the shirt and undershirt Cromer had on when he was killed, which were shown to have been in the same condition as when removed from his body. According to Cox, "the clothes were all just soaked with blood".

The objections by appellant's counsel to the introduction of these garments were overruled. Thereupon, he moved the court to set aside the swearing of the jury because the blood stained garments had no probative value and were introduced and exhibited for the sole purpose of inflaming the jury. This motion was overruled.

Ordinarily where the clothing of deceased is proved to be in the same condition as when removed from his body, it can be introduced in evidence by the Commonwealth if it has any probative value as to how and where on deceased's body the wounds were inflicted. Davis v. Com. 271 Ky. 180, 11 S.W.2d 640. In the instant case the bloody clothing was not competent since the undertaker had testified as to the extent and location of all the wounds, as well as to the powder burn on the body, and Burke did not deny inflicting any of the wounds. Horton v. Com. 312 Ky. 63, 226 S.W.2d 526. However, it is not necessary for us to determine whether we would reverse the judgment on this error standing alone, because it will have to be reversed on account of an erroneous instruction which was prejudicial to appellant's substantial rights. On another trial, should the Commonwealth prove the number, nature and extent of the wounds found on deceased's body, and should appellant not deny having inflicted them, the court will not permit the Commonwealth to introduce this bloody clothing.

Counsel for appellant vigorously attack the qualification of the self-defense instruction, insisting that it is not supported by the evidence; is confusing; not complete; and gives undue prominence and emphasis to the evidence of the Commonwealth. After giving the usual self-defense instruction, the trial judge in the same paragraph, but in a separate sentence, added these words:

"But if the jury shall believe from the evidence beyond a reasonable doubt that at a time when the defendant was in no danger himself either real or reasonably apparent and at a time when he did not believe and had no reasonable grounds to believe that he was in danger of death or great bodily harm at the hands of the deceased George William Cromer and at a time when the deceased George William Cromer had abandoned a previous difficulty with the defendant and had fled from the home of the defendant that the defendant armed himself and pursued the deceased with the intention of killing him and thereby made the danger to himself on the part of the deceased, George William Cromer, excusable or justifiable on the part of the deceased in protection of himself, then you cannot acquit the defendant on the grounds of self-defense or apparent necessity."

As Cromer had withdrawn from the first encounter, left Burke's home and started for his own home, Burke lost his right of self-defense if the jury believed beyond a reasonable doubt he left his home armed with a gun in pursuit of Cromer with the intention to kill him. Lewis v. Com., 237 Ky. 786, 36 S.W.2d 639. However, it was necessary in this qualification of the self-defense instruction to include appellant's theory, based upon his uncontradicted testimony, that he left his home armed (because he thought Cromer was armed) to see if his wife and the children with her in the cellar were safe, and he proceeded from there to the county road in going to deceased's home for appellant's crying seven year old son, against whom deceased had made threats upon leaving appellant's home.

In Ayers v. Com., 195 Ky. 343, 242 S.W. 624, 625, the killing occurred in a cornfield deceased rented from Ayers and after he had warned Ayers not to enter it while deceased was gathering corn. The contention was made by the Commonwealth that Ayers had no right to enter this field, while Ayers insisted he had such right. We there wrote:

"We do think, however, that although usually unnecessary, under the peculiar facts of this case, the jury should have been informed of the right of the defendant, as well as deceased, to go and be at the place of the conflict, and that the defendant did not forfeit his right of self-defense thereby, since this was the question at issue between the parties out of which the trouble grew, and it is a general rule of universal application that a fact necessary to conviction or defense when controverted in the evidence should be submitted to the jury under an appropriate instruction. Huddleston v. Com., 171 Ky. 187, 188 S.W. 332; Curtis v. Com., 169 Ky. 727, 184 S.W. 1105; Hunter v.

Com., 171 Ky. 438, 188 S.W. 472; Burnett v. Com., 172 Ky. 397, 189 S.W. 460."

 An instruction qualifying the right of self-defense should make reference to the facts appearing in the evidence which may have constituted the bringing on of the difficulty. Toncray v. Com., 291 Ky. 471, 165 S.W.2d 8, 10. Also, it was there written:

"The gist of the rule which deprives one of the right of defending himself if he was the aggressor is the thing that he did, the overt act or hostile demonstration, which provoked the other party rather than the mere fact that he was present at the place or even had sought out the deceased. Roberson's Criminal Law, Sections 327, 328."

Instead of giving the instruction he did qualifying the right of self-defense, the trial judge should have given one (which we suggest should be in a separate paragraph) immediately following and as a part of the self-defense instruction in substantially this form:

"However, this instruction is subject to this qualification: If you believe from the evidence that deceased abandoned the difficulty in defendant's home and made threats against defendant's son, Billie Gene, and left by a path leading by the cellar in which defendant's wife and four children had taken refuge, then defendant had the right to arm himself and go to the protection of his wife and four children and to the protection of Billie Gene if he believed, and had reasonable grounds to believe, his wife and children, or Billie Gene, or any one of them, to be in danger of death or great bodily harm at the hands of deceased; but if the jury believe from the evidence beyond a reasonable doubt that at a time when defendant was in no danger to himself, or there was no danger to his wife or to any of his children, real, or to defendant reasonably apparent, at the hands of deceased, the defendant armed himself, after deceased had abandoned the previous difficulty and left defendant's home, and pursued deceased with the intention of attacking him and thereby made or brought on the danger to himself, if the jury believe from the evidence any such danger existed, then you cannot acquit defendant on the ground of self-defense, or apparent necessity therefor."

We call attention to what certainly must be a typographical error made by the clerk in copying the self-defense instruction in this record. The last phrase in that instruction reads: "then you should find the defendant not guilty of self-defense and apparent necessity." Surely, this part of that instruction as given by the trial judge must have read: "then you will find the defendant not guilty on the ground of self-defense or apparent necessity." Let us remind the profession that all we have to go by is the record before us and it is the responsibility of counsel and the trial judge to see that the instructions as copied in the bill of exceptions are in the exact words of those given on the trial.

Since we have redrafted the qualifying part of the self-defense instruction, it will not be necessary to discuss appellant's other criticisms of that instruction given by the trial judge.

The judgment is reversed because of the error in the instruction qualifying the right of self-defense, and for proceedings in conformity with this opinion.