## Curtis v. Commonwealth.

(Decided April 28, 1916.)

### Appeal from Bourbon Circuit Court. .

1. Homicide—Instructions—Defining Malice—Verbal Inaccuracy.—A verbal inaccuracy in defining the meaning of malice is not prejudicial to defendant upon a trial of an indictment for murder, where the jury found defendant to be not guilty of murder, but of manslaughter.

2. Homicide—Instructions—Self Defense.—An error in an instruction given upon the accused's right of self defense is not prejudicial to him where there is no evidence at all that the homicide was committed in self defense, and where he does not claim to have acted in self defense.

3. Homicide—Instructions.—It is the duty of the court to so instruct the jury that the accused, in a prosecution for homicide, may have the benefit of any lawful defense which he has, but it is not necessary or proper to give an instruction to the jury as to the rights of the accused to a defense, where there is no evidence offered which tends to support such a defense.

4. Homicide—Instructions—Sudden Affray.—Where the accused is found guilty of voluntary manslaughter, it is not prejudicial to him

that the words "in sudden affray" were omitted from an instruction defining such crime.

JAMES M. O'BRIEN, J. L. BLANTON and EMMETT M. DICKSON for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, James J. Curtis, was in the business of conducting a saloon and restaurant in Paris, Kentucky. A door led from the restaurant into the saloon, opening opposite the counter in the saloon and about eight or ten feet from it.

Curtis had in his employ a negro, whose name was Reuben Henderson, and who had been engaged by appellant for five or six weeks in cleaning up the saloon and restaurant and waiting upon the customers in both places. On the evening of the 13th day of February, 1914, the appellant was drunk and the negro was drinking to some extent. Near to twelve o'clock on that evening the negro was behind the counter in the saloon waiting upon some customers, when the appellant came into the saloon from the restaurant and directed the negro to serve certain parties, who were standing before the counter, with whiskey or whatever they wanted. The negro replied to him that he had already given them a sufficiency of liquor and that it was about time to close the saloon for the night. The appellant replied that it could be kept open for fifteen minutes yet, and going behind the counter, commanded the negro to go out and that he would wait upon the customers himself. The negro said nothing, but did not go, when appellant pushed him. The negro turned around and the appellant struck him twice, once in the breast and once upon the face, when the negro seized appellant by each arm between the hand and elbow, when they scuffled down to the end or near to the end of the counter, when the negro pushed appellant against a door. Appellant had said several times to the negro to turn him loose, but the negro without saying anything continued to hold appellant, when two bystanders interfered, one of them going behind the counter and taking hold of Curtis and the other taking hold of the negro, pulled him from behind the counter and directed him to get out. The negro

went toward the door which lead into the restaurant with his back to appellant, who instantly seized a revolver and discharged it across the counter, the bullet taking effect in the negro's back about two inches to the right of the median line and passing through his bladder and bowels, which it perforated in several places. The negro had just gotten inside the restaurant at the time he was shot, when he went on out of the restaurant and was next seen lying upon the ground, which was covered with snow, about twenty-five or thirty feet from the outside door of the restaurant. As quick as appellant discharged the pistol the two men who interfered took the pistol from him, when he at once secured another and rushing around the counter in the saloon, went into the restaurant, to which place one of the men followed him and took the revolver away from him. The negro died from the effects of the wound, in two or three days thereafter. The above is substantially the facts of the case with substantially no contradiction of the evidence which tended to prove the facts above stated, except that appellant himself testified that some time before the beginning of the controversy in which the shooting occurred the deceased refused to serve two negro women in the restaurant, and that he had ordered him to go out, which he did, but returned in two or three minutes and said he was going to close up the saloon, and he furthermore stated that when he took hold of the deceased behind the counter of the saloon, that deceased had struck him a blow in the breast. Appellant did not pretend that deceased was offering him any violence of any kind at the time he shot him, and the only excuse which he gave for the shooting was that he was very mad and that he fired the pistol without any intention of shooting the deceased and without intention of shooting any one in particular.

The appellant was indicted in the Bourbon circuit court for the crime of murder and his cause coming on for trial, he was found guilty by the jury of the crime of voluntary manslaughter and sentenced by the court to confinement at hard labor in the State Reformatory, at Frankfort, Kentucky, for an indeterminate period of not less than two nor more than twenty-one years. He filed grounds and moved the court to set aside the verdict of the jury and the judgment of the court and to grant him a new trial, which motion was overruled,

and being dissatisfied with the judgment, he seeks a reversal of it upon the following grounds:

First. That the court erred in giving instructions 1, 2, 3 and 4 to the jury as to the law of the case.

Second. Because the court refused to give an instruction marked "A," which was offered by appellant.

Third. Because the court erred in failing to instruct the jury upon the whole law of the case.

The instructions given to the jury by the court provide that under the facts of the case the jury might find the appellant guilty of murder, voluntary manslaughter or involuntary manslaughter, and might acquit him upon the ground of self-defense and apparent necessity for his conduct in shooting and killing the deceased. The jury was, also, directed that if it entertained a reasonable doubt from the evidence of appellant being proven guilty of any offense, to find him not guilty; and if it believed him, beyond a reasonable doubt, to be guilty of one of the three offenses, of murder, voluntary manslaughter or involuntary manslaughter, but had a reasonable doubt of which, it should find him guilty in each instance of the one which was the lesser of the offenses, and by another instruction it defined the meaning of the word "malice" and of "aforethought," as used in the instructions.

The instruction upon the subject of murder directed the jury, that if it believed from the evidence beyond a reasonable doubt that the appellant unlawfully, feloniously, wilfully and of his malice aforethought and not in his necessary or apparently necessary self-defense, shot and killed Henderson, it should find him guilty of murder. The contention is made that the court erred in defining the word "malice," as used in the instruction. The definition which the court gave of the word malice was the intentionally doing of the act of violence toward another without legal justification or excuse therefor. It is true, that a better definition "of his malice was the intentionally doing of an act of violence cause, of any wrongful act, but the criticism here is a mere verbal one and without merit. This small inaccuracy as to the particular word that should have been used, however, could not have been prejudicial in anywise to appellant or to any right of his, as the jury did not find him to be, nor the court did not adjudge him to be guilty of murder, but of voluntary manslaughter

only, which was a finding that the criminal act of which he was accused was one not done with malice, but without malice. Taber v. Com., 26 R. 754. If he had been found to be guilty of murder another question would then be presented, but having been found to be guilty of voluntary manslaughter, which is a finding that he committed the act without malice of any kind, an incorrect definition of malice could not have prejudiced him. The same may be said of the criticisms which are made in the brief of counsel upon instruction number 3, in which the court undertook to advise the jury as to the law pertaining to the right of appellant to act in his self-defense upon the occasion upon which the homicide was committed. The instruction given by the court required the appellant to be guided by "a sound" judgment, which is a judgment incapable of error, in making up his mind as to the necessity, which was impending, for him to shoot and kill the deceased, instead of a reasonable judgment; still this instruction could not have been prejudicial to the substantial rights of the appellant. It is true, that it is the duty of the court to instruct the jury in a criminal case upon every phase of the case which is presented by the evidence, and by the instructions to give to the accused the opportunity for the jury to determine the merits of any lawful defense which he has. It is not, however, either proper or necessary for the court to instruct the jury as to the rights of the defendant to a defense when there is no evidence offered in support of such a defense. It is elementary, that to justify a homicide upon the ground of self-defense, that some evidence at least must tend to prove that at the time the accused committed the homicide that there was an impending danger or that there appeared to him in the exercise of a reasonable judgment upon his part, to be a danger then and there impending. If there is no evidence which conduces to prove such a situation for the accused, there is no evidence upon which to base an instruction upon the right of self-defense. Com. v. Rudert, 109 Ky. 658; Hunn v. Com., 143 Ky. 143. At the time the accused, in the case at bar, shot and killed the deceased, there is not a scintilla of evidence which could be twisted into a support of the assertion that the shooting upon his part was done under the belief that any danger existed to himself from any threatened act of deceased. The only witness for the Commonwealth

who undertakes to say how the deceased was then acting, testifies that the last he saw of him he was running toward the door of the restaurant, with his back turned to the accused. The accused, himself, testifies to no danger or threatened danger of himself from deceased at the time he shot him, in fact states that he was not doing anything more to him at the time than he was then doing while the accused was testifying at the trial. The accused further states that he shot because he was in a sudden passion, and gives no other reason for it. Any instruction then which the court might have given as to the accused's right to shoot in his self-defense, under the state of facts in the evidence, was not justified, and the accused received whatever benefit there was from it, when he was not entitled to any such instruction, and hence any verbal error which existed in the instruction could not have been prejudicial to his substantial rights. For the same reason the instruction offered by appellant and which was denied by the court was unauthorized in the case. The appellant, also, contends that the court should have instructed the jury that if the shooting upon his part was accidental, that it should acquit him. We fail to find in the record any evidence that the shooting was accidental, and such an instruction would have been entirely unjustified. The appellant, himself, does not make any such claim and all of the evidence shows, both that for the Commonwealth and for the accused, that the accused intentionally and purposely discharged the pistol, although he claims that he shot without intention to kill the deceased, but he fails to give any reason for the shooting, unless his purpose was to kill the deceased, and when this pistol was wrested from him, he immediately seized another pistol and followed deceased into the restaurant, into which he had gone.

The contention is earnestly made that the court erred in the instruction it gave the jury, in which it was advised as to the elements which constitute the crime of voluntary manslaughter, and that this was an error which prejudiced the substantial rights of the accused, and resulted in denying him a fair trial. The error asserted is that the court instructed the jury, that if it believed from the evidence beyond a reasonable doubt that appellant unlawfully, and not in his necessary or apparently necessary self-defense, in sudden heat and passion and without previous malice, shot the deceased,

the jury should find the defendant guilty of voluntary manslaughter, when it was necessary to constitute the crime of manslaughter that appellant should have intentionally shot and killed the deceased, in sudden heat of passion, or in a sudden affray, without previous malice. To wilfully kill one in a sudden affray, without previous malice, and not in self-defense or apparently necessary self-defense, is one way of committing the crime of manslaughter, there is no doubt. To wilfully slay, in a sudden heat of passion, without previous malice, and not in necessary or apparently necessary self-defense, is, also, voluntary manslaughter. To unlawfully do an act is to do it without legal right so to do. It is, however, contended, that to commit involuntary manslaughter is to unlawfully kill, and that involuntary manslaughter may likewise be committed by unlawfully slaying one in sudden heat and passion, without previous malice, and not in self-defense or apparently necessary self-defense, and that the jury may under the instruction have found the appellant guilty of voluntary manslaughter, when the facts, which they believed from the evidence to exist, constituted involuntary manslaughter, only. There is no doubt that the elements necessary to constitute the crime of voluntary manslaughter is an unlawful, wilful and felonious killing, without previous malice, in sudden affray, or in sudden heat and passion, and not in the necessary or apparently necessary self-defense of the one doing the slaying. Com. v. Mosser, 133 Ky. 609; Com. v. Saylor, 156 Ky. 251; Wheeler v. Com., 120 Ky. 708; Greer v. Com., 111 Ky. 93; Montgomery v. Com., 26 R. 358; Mitchell v. Com., 88 Ky. 351; Roberson on Criminal Law, sec. 189; Wharton (10 Ed.) sec. 303. To be guilty of voluntary manslaughter, one must intend to slay, as opposed to an unintentional slaying. Hence the failure to embrace in the instruction, by which the jury was directed to find the appellant guilty of voluntary manslaughter, if certain facts appeared from the evidence, some term making it necessary that the killing should have been done intentionally by the appellant, renders the instruction defective and erroneous. Having arrived at this conclusion, before a reversal can be had, however, it must appear that the error, in this case, worked substantial injustice to the accused. Section 340, of the Criminal Code, provides as follows:

"A judgment of conviction shall be reversed for any error of law appearing on the record, when, upon consideration of the whole case, the court is satisfied that the substantial rights of the appellant have been prejudiced thereby."

In Rutherford v. Com., 78 Ky. 639, construing this statute, it was held that two things must appear before this court was authorized to reverse a judgment of conviction in a felony case: (1) An error of law must appear upon the record; (2) The court must be satisfied, from the consideration of the whole case, that the substantial rights of the accused have been prejudiced by the error. Collett v. Com., 121 S. W. 426; Hargis v. Com., 135 Ky. 578; Reed v. Com., 138 Ky. 568; Parrish v. Com., 136 Ky. 77, and many others. In the case at bar, the only issue presented by the evidence was whether the shooting of deceased was intentional or unintentional. The overwhelming weight of the evidence is to the effect that appellant intentionally shot the deceased. There is a scintilla of evidence contained in the testimony of appellant that he did not intend to shoot him. The court gave effect to this scintilla of evidence by instructing the jury that if the appellant did not intentionally shoot deceased, to find him guilty of involuntary manslaughter. The jury was thereby specially directed, that if it was convinced that the shooting of deceased was unintentional, it could find appellant guilty of involuntary manslaughter only, and not of voluntary manslaughter. It was obliged to understand that to find him to be guilty of voluntary manslaughter, the shooting must have been intentional. This, combined with the fact that it was instructed that if the killing was unlawful, done in a sudden heat and passion, without previous malice, and not in self-defense, and in the light of the other instructions we can not conclude that the jury was misled in any way by the instruction. The contention that the instruction was prejudicial because the words "in sudden affray" were not included in it does not avail the appellant anything, because the instruction in that respect was more favorable to appellant than he was entitled to, as it omitted one of the states of case in which, from the proof, he might have been found guilty of voluntary manslaughter. Where the accused is found guilty of voluntary manslaughter, the omission from the instruction upon that subject of the words "in

sudden affray" is not prejudicial. Peace v. Com., 146 Ky. 758; Carson v. Com., 149 Ky. 754.

It does not appear that upon the facts the jury could have found any other verdict than it did.

The judgment is therefore affirmed.