Elizabeth TURPIN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 87–SC–84–MR.

Supreme Court of Kentucky.

Nov. 30, 1989.

**620**

Rodney McDaniel, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Valerie L. Salven, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Turpin of murder and sentenced her to life imprisonment without benefit of parole for 25 years.

The questions presented are whether a diary and a letter were properly admitted into evidence; whether it was reversible error to refuse a mistrial following the arrest of a juror between the guilt and penalty phases of the trial; whether separate trials should have been held; whether the procedure used in regard to peremptory challenges was error; whether there was error in refusing to excuse prospective jurors; whether there was error in permitting a witness to testify that he believed the defendant was involved in the murder; whether there was error in the prosecutor's question about appellate process; whether the victim impact statements were improper; whether it was reversible error to lock the court room doors during trial and whether an instruction should have been given on hindering prosecution.

Turpin and her codefendant were charged with capital murder for the stabbing death of Turpin's husband allegedly pursuant to an agreement between Turpin and codefendant Brown to have the actual killer murder the husband so that they might receive money from life insurance proceeds paid as a result of the death. The killer pled guilty and received a life sentence. He testified against Turpin and codefendant Brown at their joint trial.

■ It was not an abuse of discretion for the trial judge to permit a diary entry and a letter written by Turpin to be admitted into evidence for the purpose of showing motive, intent and state of mind. Turpin argues that the diary entry and the letter were too remote and were irrelevant. The diary entry was written four months before she met her husband, and two years before he was murdered. The letter was written more than a year before the murder.

The diary entry related to Turpin's interest in wealth, power and death. Turpin testified about the entry and its meaning as well as discussing other entries to support her testimony. The diary entry was written only four months before she met her husband. Evidence of the state of mind of the defendant and her relationship with her husband was admissible to show state of mind. The letter and the diary serve that purpose. It is not improper to show even the commission of other crimes by a defendant if such evidence is relative to the issue of motive, intent or state of mind. *Murphy v. Commonwealth*, Ky., 652 S.W.2d 69 (1983) cert. den. 465 U.S. 1072, 104 S.Ct. 1427, 79 L.Ed.2d 751. In any event the alleged error was harmless and did not affect the substantial rights of the defendant. RCr 9.24. Considering the whole case there is no substantial possibility that the result would have been any different. *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969).

■ The trial judge did not abuse his discretion in refusing to grant a mistrial following the arrest of a juror between the guilt and penalty phases of a trial. After the jury had entered its verdict with regard to guilt, and during a weekend recess, one of the jurors was arrested on a felony charge of conspiracy to promote gambling. The two alternate jurors had already been

excused from service because the guilt phase had been completed. Brown had expressed concern because the juror would now have a reason to curry favor with the prosecution even though the Commonwealth indicated that it would be disqualified and a special prosecutor would be sought. Turpin now contends she was denied a trial by an impartial jury pursuant to the Sixth Amendment to the U.S. Constitution.

When questioned by the defense attorney for codefendant Brown as to whether the prosecution had done the juror a favor by postponing arraignment until the conclusion of the trial, the juror said "I don't take it as a favor, I guess you could take it as a favor." No bias in favor of the prosecution can be inferred from that statement. The juror informed his fellow jurors of his arrest and asked if their views toward him would be different in the case. The juror stated that each person on the jury replied that it would not affect them. The trial judge then questioned all the members of the jury individually. He concluded that the penalty phase of the trial could be decided by the same jury without prejudice to the defendant. In order to declare a mistrial, there must appear in the record "a manifest necessity for such action or an urgent and real necessity." *Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672, 678 (1985) cert. den. 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678.

It was not reversible error for the trial judge to deny separate trials to Turpin and her codefendant. Separate trials are required under RCr 9.16 only when it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of the offenses or defendants at trial. Severance is a matter of judicial discretion and the allegation that there are antagonistic defenses is only one of the factors for the trial judge to consider. *McQueen v. Commonwealth*, Ky., 721 S.W.2d 694, 699 (1987) cert. den. 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858. The decision of the trial judge in such a situation will not be reversed unless the reviewing court is clearly convinced that prejudice occurred and that the likelihood of prejudice was so clearly demonstrated that failure to grant severance was an abuse of discretion. *Rachel v. Commonwealth*, Ky., 523 S.W.2d 395 (1975).

■ The procedure followed by the trial judge in regard to peremptory challenges was permissible. The trial judge gave the defendants a total of 12 peremptory challenges between them. RCr 9.40 provides that if the offense charged is a felony, the prosecution is entitled to five peremptory challenges and the defendant or defendants jointly to eight peremptory challenges. If one or two additional jurors are called, the number of peremptory challenges allowed by each side shall be increased by one. If more than one defendant is being tried the court may at its discretion allow additional peremptory challenges to each defendant. Here, the Commonwealth received six peremptory challenges and the defendants jointly received twelve challenges. *Roberts v. Taylor*, Ky., 339 S.W.2d 653 (1960), which Turpin claims should have been used, is not applicable. The defendants have not been prejudiced in any way by the decision of the trial judge to give them twelve peremptory challenges. The United States Supreme Court has long recognized that peremptory challenges are not of constitutional dimension. *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Turpin was not denied any state or federal constitutional right with regard to peremptory challenges.

The trial judge did not abuse his discretion in refusing to excuse three prospective jurors. Unless the action of the trial judge is clearly an abuse, it should not be reversed on appeal. *Scruggs v. Commonwealth*, Ky. 566 S.W.2d 405 (1978) cert. den. 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321. None of the individuals ultimately served on the jury.

Turpin can demonstrate no prejudice or constitutional violation because the jurors were removed by peremptory challenge by the defense. In *Ross, supra,* the U.S. Supreme Court found that even though a state court trial judge had acted erroneously in refusing to dismiss the prospective

juror for cause, the error did not deprive the defendant of an impartial jury or any entitlement under state law because he used a peremptory challenge to remove the prospective juror. 487 U.S. 81 at 91, 108 S.Ct. 2273 at 2280, 101 L.Ed.2d 80 at 92.

Turpin waived any objection concerning the prosecution's questioning of witness Elliott. She did not raise any timely objection to this line of questioning at trial. Immediately before the objected to question on redirect examination of Elliott, counsel for Turpin had allowed Elliott to testify without objection in response to questions from codefendant Brown that if he had heard the conversation about life insurance in the back seat he would have taken it as a joke. Turpin permitted such questioning to enter the record without objection on earlier occasions and in fact engaged in exactly the same sort of questioning when it seemed advantageous to her. *Hamilton v. Commonwealth*, Ky., 659 S.W.2d 201 (1983).

It was not reversible error to permit the prosecution to cross-examine Turpin concerning an interpretation of the diary entry. The reference to the appellate process was brief and not prejudicial. The jury's sense of responsibility for the ultimate sentence was not diminished. Taken in context, the question posed by the prosecutor was essentially the same as if he had asked Turpin whether she were aware that the preparations for carrying out a sentence of death usually took seven years to complete.

Turpin was correctly sentenced pursuant to Kentucky law, and the question of victim-impact statements was not properly preserved for appellate review. It does not amount to palpable error or a manifest injustice pursuant to RCr 10.26. The jury which recommended the sentence Turpin ultimately received was not exposed to the victim impact statement of which she now complains. The crucial difference between *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and this case is that the jury in *Booth* considered the victim impact statement during the sentencing phase of that trial. Kentucky's victim impact statement, K.R.S. 421.520(3) provides

that the statement is presented to the judge and not to the sentencing jury.

Turpin's complaint that after admission of the public the court room doors were locked while the trial was in progress was not properly preserved for appellate review. RCr 9.22. Even alleged constitutional questions may be waived if they are not presented to the trial judge. *Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981) cert. den. 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167. The authorities cited by Turpin on this question involved situations where the defendants raised timely objections before the trial judge. In this case no timely objection was made. There is no basis for invoking any palpable error rule pursuant to RCr 10.26 because there was no manifest injustice.

Turpin was not entitled to an instruction on a subsequent offense as a lesser-included offense in the crime of homicide. The trial judge is required to give the whole law of the case in instructing the jury. Lesser included instructions are required only if they apply to the evidence of the case. *Ragland v. Commonwealth*, Ky., 421 S.W.2d 79 (1967); *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). The request by Turpin for an instruction on hindering prosecution pursuant to K.R.S. 520.120 was without merit. Hindering prosecution is not a lesser included offense of murder.

The judgment of the trial court is affirmed.

STEPHENS, C.J., and GANT and VANCE, JJ., concur.

COMBS, J., concurs by separate opinion in which LAMBERT, J., joins.

LEIBSON, J., dissents by separate opinion.

COMBS, Justice, concurring.

I disagree with my brethren as to the relevancy and the admissibility of appellant's diary and letters. In my opinion, these were too remote and should have been excluded.

Notwithstanding this, I concur in the result because the remaining evidence of her guilt was so overwhelming. This renders the foregoing error harmless.

LAMBERT, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

There are a number of errors which should require this Court to reverse and remand.

First, and perhaps most seriously, we have approved the Commonwealth's use of a diary entry and a letter, both remote in time and unrelated to the events in question other than by speculation. The Commonwealth Attorney improperly used this diary entry in closing argument to prove the appellant's "character":

> "From that diary we can get a glimpse of that woman's character, what she does, why she does it, and how she does it."

The diary entry was written when Elizabeth Turpin was a high school teenager. This was four months before she met Michael Turpin and nearly two years before he was murdered. It portrayed her as devious, violent and manipulative. For the sake of brevity, I will quote only a part, although in full its impact is more devastating:

> "I see my life stretching disgustingly ahead of me. I see power, wealth and death in my pools of green eyes. Power because of my ability to manipulate people. Yes, that's right. I use people only for the furtherance of my own being and the best part of it is that I feel no guilt or remorse concerning this fact. Well, what can I say? Along with power comes wealth. I know I can get everything I want.... Now the difficult topic, death. Maybe alcohol, maybe overdose, maybe by means of violence. All I know is that I don't want to live past thirty. I'd like to die at twenty-seven. What a delightful age to kiss life goodbye.... I want to mix with the socially elite, not these crappy lowlives I can wrap around my finger. I would really like a challenge, but one I can overcome, which I will anyway regardless of how devious or good my opponent is. Take it as it comes, though, and I will, but I will overcome."

The theory of the Commonwealth was that Elizabeth Turpin drew Karen Brown and Keith Bouchard into a plot to murder her husband for life insurance proceeds, using a tangled web of lesbian sexual favors and venality. The diary entry and, to a lesser extent, the letter supposedly confirmed this theory. The principal evidence implicating Elizabeth Turpin in the murder of her husband was the testimony of Keith Bouchard, the confessed coldblooded murderer of Michael Turpin who made a deal to testify against Elizabeth Turpin in exchange for a life sentence. The purpose of this diary and letter was to confirm his testimony by proving Elizabeth Turpin was capable of planning such a crime and inducing Bouchard and Brown to carry it out. Her supposedly bad "character" was an important piece of the mosaic.

The Majority Opinion asserts that this evidence was admissible "to show state of mind;" then it equivocates by reasoning that "in any event" it was "harmless." Neither reason will bear close examination.

The black letter law applicable to introducing "character evidence" as part of the Commonwealth's case against the accused is thus stated in the *Federal Rules of Evidence*, 404(a):

> "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion[.]"

Proving character, to show that she "acted in conformity therewith," was the *sole* purpose in introducing the letter and diary entry against Elizabeth Turpin.

In *The Kentucky Evidence Law Handbook* by Lawson, 2nd ed. (1984), the author states:

> "The first rule of character evidence law, as applied to criminal cases, is that the bad character of an accused cannot be proved unless he has elected to make character an issue in the case."

The Commonwealth, not Elizabeth Turpin, elected to make her "character an issue in the case."

The "state of mind" exception to the hearsay rule, misunderstood and misapplied in the Majority Opinion, does not make admissible evidence of character traits offered to prove the person committed the offense. This rule permits evidence of statements which serve to explain the state of mind of the actor at the time of his act. It requires both that "the state of mind of a person at a particular time is relevant" and that "his declarations made at that time are ... proof on that issue." *Lawson, supra* at Sec. 8.50. There must be a direct connection between the statements purporting to show the "state of mind" and the act at issue which the statements, otherwise hearsay, explain. The state of mind exception is no justification for admitting remote, rambling stream of consciousness in a juvenile's diary written two years before the event. Elizabeth Turpin's state of mind when the diary entry was made is unconnected to the murder of a husband as yet unknown except by the Commonwealth's use of it as character evidence. Nor was there justification for admitting the letter Elizabeth Turpin wrote to her husband almost two years before his murder, referring to unrelated events involving neither of them, useful for sinister speculation.

Nor should we state the evidence was "harmless." This case turned on whether to believe Keith Bouchard, the confessed murderer who claimed Elizabeth Turpin put him up to it, or to believe Turpin who disclaimed any intent to see her husband killed. We cannot rule out the reasonable and substantial possibility that the inadmissible diary entry tipped the scales against her.

Next, the trial court erred in refusing the appellant a separate trial. RCr 9.16 requires separate trials when a defendant will be improperly prejudiced by joinder. Elizabeth Turpin was deprived by the joinder of the opportunity to present significant evidence in her own defense, to wit: a statement made to the police by her codefendant, Karen Brown, tending to exonerate Turpin. In this case, on pretrial motion the portion of Karen Brown's statement that followed after she indicated that she wanted a lawyer present was excluded from the evidence to protect Karen Brown's Fifth Amendment right to counsel during interrogation. But this denied Elizabeth Turpin access to important evidence in her favor. In the excluded part of Brown's statement, she said that Keith Bouchard was the one who instigated the killing; that Elizabeth Turpin did not go with Brown and Bouchard because "she didn't think we would do it;" that appellant "never did say kill him." There was substantial evidence in this statement that was consistent with and corroborative of Elizabeth Turpin's own testimony and clearly helpful. This evidence was denied Turpin because it was inextricably bound up with testimony incriminating Brown that was constitutionally impermissible.

In *Crawley v. Commonwealth*, Ky., 568 S.W.2d 927 (1978), we adopted from the Federal Rules of Evidence, Sec. 804(b)(3), the exception to the hearsay rule for statements against penal interest. We held that the "declarations against interest" exception to the hearsay rule includes, in addition to statements "contrary to the declarant's pecuniary or proprietary interest," statements against penal interest, i.e., tending to subject the person making the statement to "criminal liability." The portion of the statement made by Karen Brown to the police that was excluded was against her penal interest in two respects: in further incriminating her in the murder and in establishing her as a principal malefactor, not just as Turpin's lackey, in carrying it out. The part of Karen Brown's statement tending to exculpate Elizabeth Turpin from involvement made Brown's situation worse. At trial, her principal effort at a defense was her excuse that Elizabeth Turpin was the prime motivator and she was but a helpless pawn in the game. Because the portion of the Brown statement that would have materially assisted Turpin further incriminated Brown, no further corroboration of the trustworthiness of the declarations

were needed to render the statement admissible in Brown's case.

This case bears the same defect as existed in *Cosby and Walls v. Commonwealth*, Ky., 776 S.W.2d 367 (1989), wherein we recently reversed Cosby's conviction on charges of robbery, kidnapping and murder, stating it was prejudicial error to try him jointly with Walls who had confessed because Cosby's conviction was inextricably bound up in his codefendant's confession. Turpin has a stronger claim on reversal than did Cosby. Unlike Cosby, Turpin's counsel moved for a separate trial and alerted the court to the problems that would exist because of the out-of-court statement made by her codefendant in a joint trial. Cosby's claim was premised on proof of manifest injustice, whereas here, where there was an objection, the Commonwealth bears the burden of showing the error was harmless. It is a burden it cannot sustain in present circumstances.

At a separate trial Elizabeth Turpin would call Karen Brown as a witness. Either Brown would testify as she did in her statement that Elizabeth Turpin was not involved in setting up the murder, or if she testified otherwise her statement would be substantive evidence for Turpin under *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969). If, as I would anticipate, Brown would refuse to testify at all, asserting the Fifth Amendment, this would mean she is unavailable as a witness and trigger the exception to the hearsay rule for a statement against penal interest. One way or another, in a separate trial this evidence comes in. So the joint trial denied Elizabeth Turpin a fair trial. This case presents the opposite side of the same coin presented in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Accordingly, the conviction should be reversed.

Next, the trial court erroneously denied Turpin's request for an instruction on the offense of hindering prosecution or apprehension in the first-degree, KRS 520.120. The Majority Opinion has affirmed stating that "hindering prosecution is not a lesser included offense of murder." This is be-

side the point. If the jury believed Turpin's testimony, hindering prosecution was the only offense that she committed. She testified that she neither planned nor participated in killing Turpin, that her only crime was to assist them in their attempted cover-up.

While hindering prosecution is not a lesser included offense of murder, it is quite clearly a lesser criminal offense, carrying a penalty potential of 1 to 5 years as contrasted with the death penalty, and such an instruction was necessary to present the appellant's theory of the case. In *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534, 549–50 (1988), when presented with the same argument as the appellant makes here, we stated:

"The right to instructions embodying an alternative offense, which is the defendant's theory of the case, is not accommodated by an instruction that the defendant will be found not guilty if the Commonwealth has failed to prove the offense charged in the indictment beyond a reasonable doubt. Sanborn could hardly expect the jury to exonerate him in the face of his criminal misconduct, and this was the reason why his counsel requested instructions on a crime that presented a middle ground between the offense more severely punished and acquittal.

. . . .

In one sense it may appear a misnomer to refer to the situation that exists when an accused admits to a state of facts that constitutes a criminal offense, while denying further facts that constitute a more serious offense, as a 'defense.' But by doing so the accused defends against the principal charge."

Turpin is entitled to a new trial, and an instruction on the lesser offense that presents her theory of the case, just as was Sanborn. While it is true as a general rule that the trial court should not instruct on a separate, uncharged offense, i.e., collateral criminal activity, this principle must give way to the defendant's right, upon request, to an instruction on a lesser offense presenting his theory of the case, because it is the duty of the court "by the instruc-

tions to give to the accused the opportunity for the jury to determine the merits of any lawful defense which he has." *Curtis v. Commonwealth*, 169 Ky. 727, 184 S.W. 1105, 1107 (1916). As stated in *Brown v. Commonwealth*, Ky., 555 S.W.2d 252, 257 (1977):

> "Evidence suggesting that a defendant was guilty of a lesser offense is, in fact and in principle, a defense against the higher charge, though it is not a 'defense' within the technical meaning of that term as used in the Kentucky Penal Code, cf. KRS 500.070."

Finally, I disagree with so much of the Majority Opinion as states that "Turpin can demonstrate no prejudice or constitutional violation because the jurors [who should have been removed for cause], were removed by peremptory challenge by the defense," citing *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). *Ross* was premised on "a long settled principle of Oklahoma law that a defendant who disagrees with the trial court's ruling on a challenge for cause must, in order to preserve" error, (1) exercise a peremptory challenge to remove the juror, (2) "exhaust all peremptory challenges," and (3) *prove that "an incompetent juror [was] forced upon him."* [Emphasis added] 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80. The United States Supreme Court held that Oklahoma law did not violate Federal constitutional rights. Until now the law in Kentucky has always been to the contrary, that prejudice is presumed and the defendant is entitled to a reversal in those cases where a defendant is forced to exhaust his peremptory challenges against perspective jurors who should have been excused for cause. *Rigsby v. Commonwealth*, Ky., 495 S.W.2d 795, 799 (1973), cited in the Majority Opinion, is misapplied. In *Rigsby* the appellant's complaint "of an abuse of discretion by the trial court in refusing certain challenges for cause" was denied because no prejudice is presumed where the defendant exhausts his peremptory challenges. The Opinion states:

> "The argument is unavailing because nowhere do appellants assert they were forced to exhaust their peremptory challenges, nor does examination of the record reveal such circumstance.... *A defendant who fails to exhaust such challenges cannot complain concerning the jury selection.*" [Emphasis added] *Id.* at 798–99.

The rule in this Commonwealth has always been that prejudice is presumed where a party is forced to utilize a peremptory challenge against a juror who should have been excused for cause, so long as the party utilizes all of the peremptory challenges assigned to him. Without forewarning to the trial bar, we have quietly and subtly shifted this rule to a new one stating that no prejudice is presumed when a party is forced to use peremptory challenges to excuse jurors who should have been excused for cause *unless* that party not only then exhausts all peremptory challenges available to him, but also requests additional challenges on grounds that he was unfairly denied challenges for cause, or, at the least, before having a right to complain a party must state on the record additional persons against whom he would have exercised peremptory challenges had such challenges been available to him.

As I stated in my Concurring Opinion in *Marsch v. Commonwealth*, Ky., 743 S.W.2d 830 (1988), when I could see this procedural shift coming down the line, because this new procedure requires a party to question the trial court's previous ruling at the time of the challenge for cause, it requires "what is at best an exercise in futility, and at worse may be viewed as arguing with the judge about his ruling."

I continue to adhere to the view that where a trial judge abuses his discretion by refusing to permit a challenge for cause, the better rule is that prejudice should be presumed in those cases where the party then utilizes all of his peremptory challenges. At the least we should alert the trial bar to the fact that this is no longer the law, that further steps will be required or the error in refusing the challenge for cause will be viewed as harmless. Unfortunately, this important change, highlighted only in this Dissent, will not be headnot-

ed, and likely will go unnoticed as a procedural trap to snare future litigants.

In the present case the trial court abused its discretion in refusing challenges for cause against three different jurors, Kenneth Saunier, Brenda Crank, and Ed Baker. While, perhaps, juror Saunier's answers on voir dire were not so fraught with implied bias that he was beyond rehabilitation, the same cannot be said of Crank and Baker. Crank had formed an opinion that the appellant was guilty from discussing the case with her father, the coroner. Baker had significant ties to the victim's family and had discussed the case with his boss who told him the appellant was guilty. He admitted he would be biased because of this. These two jurors were not, and could not be, sufficiently rehabilitated to meet the minimum requirement of "indifferent jurors" constitutionally necessary for a neutral jury. *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). The appellant was forced to use up his peremptory challenges against these jurors who should have been excused for cause. He was deprived of his peremptories and of due process under Kentucky law, which, at least until now, has not been the same as Oklahoma law. The trial court's abuse of discretion in failing to discharge these jurors for cause should be viewed as reversible error.

I would reverse Turpin's conviction and remand for a new trial.