**Robert WILLIAMS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 90–CA–2736–MR.**

Court of Appeals of Kentucky.

Feb. 21, 1992.

Discretionary Review Denied by Supreme Court June 17, 1992.

V. Gene Lewter, Lexington, for appellant.

Chris Gorman, Atty. Gen., Michael L. Harned, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWERTON, HUDDLESTON, and McDONALD, JJ.

HOWERTON, Judge.

Robert Williams appeals from his conviction in the Fayette Circuit Court for manslaughter, second degree, for which he received a five-year prison sentence. He now argues that the trial court erred by refusing to strike a juror for cause, for prohibiting him from introducing the victim's mental health records, and by refusing to consider alternative sentencing as required by KRS 500.095. Considering all of the particular facts in this case, we find no reversible error and affirm.

On March 30, 1990, Williams killed Albert Combs with a shotgun. Combs was known to be a bully, and he had a violent temper. He was also known to have mental problems and periodically was counseled and treated by Comprehensive Care in Lexington, Kentucky. The shooting was witnessed by several people, and Williams claims to have acted in self-defense; however, the specific details of the shooting are not necessary to a resolution of the three issues raised by Williams.

Williams first claims that the court erred by refusing to strike a juror for cause after the juror indicated that he thought someone who shot and killed another was automatically guilty of murder. Williams' counsel continued questioning the jury panel concerning self-defense and specifically asked if any juror had a problem with the idea of self-defense. None of the jurors responded. After completing voir dire, the defense counsel moved to strike the one juror on the ground that he had formed an opinion as to Williams' guilt.

The court declined to strike that juror, indicating that he had been rehabilitated by the questioning concerning self-defense. The juror was nevertheless struck by the defense through the use of a peremptory challenge.

Williams now claims he was denied a fair trial because he was forced to use a peremptory challenge as opposed to having this juror struck for cause. We find no prejudicial error. The juror in question did not sit on this panel, and it appears that Williams was accorded an impartial jury. There was no violation of a constitutional right in this sense. *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). *See also Turpin v. Commonwealth,* Ky., 780 S.W.2d 619 (1989), *cert. denied,* 494 U.S. 1058, 110 S.Ct. 1530, 108 L.Ed.2d 769 (1990).

In order to prevail on this issue, Williams must demonstrate that all of his peremptory challenges were exhausted and that an incompetent juror was allowed to sit who should have been struck for cause. *Marsch v. Commonwealth,* Ky., 743 S.W.2d 830 (1987). Williams does not complain that any incompetent juror sat, nor was he required to exhaust his peremptory challenges in order to eliminate all suspected prejudicial jurors.

The trial court must excuse jurors for cause when there is a "reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence...." RCr 9.36(1). Although this particular juror initially indicated that he thought Williams was guilty of murder if he admittedly shot Albert Combs, the juror did not indicate that he would have any problem excusing Williams if he was acting in self-defense. We cannot say that the trial court abused its discretion, nor was its decision clearly erroneous. *See Peters v. Commonwealth,* Ky., 505 S.W.2d 764 (1974), and *Campbell v. Commonwealth,* Ky., 788 S.W.2d 260 (1990).

Williams next argues that the trial court erred by prohibiting the introduction of Combs' Comprehensive Care records. Prior to trial, Williams requested that the records be made available to him. The

court initially granted the request, but Comprehensive Care responded with a motion to quash the subpoena. The court conducted a hearing and determined that the records would be inadmissible.

KRS 421.215 provides that communications between a patient and a psychiatrist are to be confidential and privileged. We determine that *Amburgey v. Central Kentucky Regional Mental Health Board,* Ky. App., 663 S.W.2d 952 (1983), and *Southern Bluegrass Mental Health v. Angelucci,* Ky.App., 609 S.W.2d 931 (1980), are dispositive of this issue. As such, these records are privileged communications, and KRS 421.215 prohibits their disclosure.

■ Williams attempts to distinguish these two cases because Combs is deceased, whereas the parties involved in the two cited cases were not. We fail to see where this fact should make any difference. The privilege survives the death of the patient. The statute does not provide any exception merely because a patient dies. Whatever revelations Combs might have given to his doctor were confidential, and the privilege is absolute.

Furthermore, it appears that any information which might have been obtained from Comprehensive Care records would be mostly cumulative. Several witnesses testified as to Combs' character and his reputation for being dangerous. Even Combs' mother testified that he was on medication from Comprehensive Care but that he had not taken the medication for three or four months. She testified that he could be violent and that he became worse when he was drinking alcohol. There was proof that he had been drinking on the day he was killed.

■ Williams' final argument is that the court erred by refusing to consider the alternative sentencing provisions of KRS 500.095. Subsection (1) of that statute, which was enacted in 1990, provides:

*In every case in which a person* pleads guilty to or *is convicted of a crime punishable by imprisonment, the judge shall consider* whether the person should be sentenced to a term of *community service as an alternative to the prison term.* The term of community service shall not be shorter than the length of the prison term nor longer than twice the length of the prison term. Failure to complete the prescribed term of community service shall be deemed a probation violation and shall subject the defendant to serve the prison service originally fixed by the court or jury. (Emphasis added.)

The trial court declined to consider alternative sentencing, however, because of KRS 533.060(1), which was enacted in 1976. That statute reads:

*When a person has been convicted of* an offense or has entered a plea of guilty to an offense classified as *a Class A, B, or C felony and the commission* of such offense *involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death* or other serious physical injury, *such person shall not be eligible for probation, shock probation or conditional discharge.* (Emphasis added.)

Williams argues that KRS 500.095 is more specific, and that it was enacted subsequent to KRS 533.060(1), and it is therefore controlling.

■ Several principles of statutory construction come in for consideration in resolving this problem. Where a conflict exists between two statutes, the later statute enacted is generally controlling. *Commonwealth v. Hunt,* Ky.App., 619 S.W.2d 733 (1981). This principle standing alone would favor KRS 500.095, which was enacted in 1990. KRS 533.060(1) was enacted in 1976. We also note, however, that where there is conflict between statutes or sections thereof, it is the duty of the court to attempt to harmonize the interpretation so as to give effect to both sections or statutes, if possible. *Ledford v. Faulkner,* Ky., 661 S.W.2d 475 (1983). The court must not interpret a statute so as to bring about an absurd or unreasonable result. *George v. Alcoholic Beverage Control Board,* Ky., 421 S.W.2d 569 (1967). If we agreed with Williams and concluded that

KRS 500.095 were controlling, we would make a nullity of KRS 533.060(1).

■ Another rule of statutory construction is that specific provisions of a statute take precedence over general provisions. *Kentucky Trust Co. v. Department of Revenue*, Ky., 421 S.W.2d 854 (1967). The language in KRS 500.095(1) is very specific when it directs that *in every case* the judge *shall consider* alternatives to prison, but we also note that KRS 533.060(1) is very specific when it directs that anyone convicted of using a firearm in the commission of a Class A, B, or C felony must be sentenced to a term in prison. A similar conflict arose between the provisions of KRS 532.110(1) and (2) and KRS 533.060 in *Commonwealth v. Martin*, Ky.App., 777 S.W.2d 236 (1989). In *Martin*, it was held that the provisions of KRS 533.060(3), requiring consecutive sentencing for an offense occurring while one was awaiting trial for another crime, were more "specific" and "tailored" to the facts, and that those provisions should override the more general provisions of KRS 532.110, which allowed some concurrent or consecutive sentences for convictions of multiple offenses.

We also note that *Riley v. Parke*, Ky., 740 S.W.2d 934 (1987), and *Devore v. Commonwealth*, Ky., 662 S.W.2d 829 (1984), *cert. denied*, 469 U.S. 836, 105 S.Ct. 132, 83 L.Ed.2d 72 (1984), have held that the General Assembly clearly intended to provide severe penalties for convicted and paroled felons who commit subsequent felonies. It is also clear that the General Assembly specifically intended to provide a prison sentence for anyone convicted of using a firearm in the commission of a serious crime.

On the other hand, it is just as clear that the legislature has recognized the need and value for giving the courts some options and alternatives to incarceration when imposing just sentences. The General Assembly's dilemma is now this Court's problem. Having to resolve the conflict, we determine that KRS 533.060(1) is controlling over KRS 500.095. If the legislature intends otherwise, it must rewrite several conflicting statutes. Using the principles we have discussed, we could have decided this case either way. However, while digging deeper to find the true legislative intent, we took note of three additional statutes not otherwise presented and argued in this appeal. They are KRS 533.-030(5), KRS 533.010, and KRS 533.070.

KRS 533.030(5) specifically exempts Class D felonies from the requirements of KRS 533.060(2). The latter statute provides in essence that if a person is on parole, probation, shock probation, or conditional discharge, and during that time commits another felony for which he is convicted, he is ineligible for probation, shock probation, or conditional discharge. KRS 533.030(5) provides in part: "Any prohibitions against probation, shock probation, or conditional discharge under KRS 533.060(2), or 532.045 shall not apply to persons convicted of a misdemeanor or Class D felony...." *See Corman v. Commonwealth*, Ky.App., 822 S.W.2d 421 (1991). The legislature is deemed to know what statutes it has enacted. It could have modified or repealed the specific requirement of imprisonment for A, B, or C felons who used a firearm, but it has made no effort to modify KRS 533.060(1). This is somewhat significant.

KRS 533.010 was originally enacted in 1974. It authorized probation or conditional discharge in any case except where the death penalty was imposed. In 1976, KRS 533.060 toughened the law and required prison sentences in some instances. Section 4 of Chapter 497 of the 1990 Acts of the General Assembly added an allowance for "probation with an alternative sentencing plan." This amendment essentially changed nothing.

Section 2 of Chapter 459 of the 1990 Acts added a new section (3) to KRS 533.010. It reads:

When the court deems it in the best interest of the defendant and the public, the court may order the person to work at community service related projects under the terms and conditions specified in *KRS 533.070.* Work at community service related projects shall be considered

as a form of conditional discharge. (Emphasis added.)

Section 1 of Chapter 459 created KRS 533.070, which was referred to in KRS 533.010(3). KRS 533.070(1) reads in pertinent part as follows: "In any case where imprisonment is an authorized penalty and *where imprisonment is not required* by the statute relating to the crime committed, a court may, as a form of conditional discharge, sentence the defendant to work at community service related projects...." (Emphasis added.) This enactment clearly indicates that the legislature was aware of some mandatory prison requirements which it did not wish to repeal.

Because KRS 533.070 was enacted in 1990, just as was KRS 500.095, we determine that the legislature intended to continue mandatory imprisonment in the specific situations set out in KRS 533.060(1). The trial court properly declined to consider alternatives to incarceration for Williams.

The judgment of conviction and sentence of Williams by the Fayette Circuit Court is affirmed.

McDONALD, J., concurs.

HUDDLESTON, J., concurs in part and dissents in part and files a separate opinion.

HUDDLESTON, Judge, concurring in part and dissenting in part.

I dissent from that portion of the Court's opinion which rejects Williams' argument that the trial court erred by refusing to consider the alternative sentencing provisions of KRS 500.095(1). That statute, enacted in 1990, provides that:

In *every case* in which a person pleads guilty to or is convicted of a crime punishable by imprisonment, *the judge shall consider* whether the person should be sentenced to a term of community service as an alternative to the prison term. The term of community service shall not be shorter than the length of the prison term nor longer than twice the length of the prison term. Failure to complete the prescribed term of community service shall be deemed a probation violation and

shall subject the defendant to serve the prison service originally fixed by the court or jury. (Emphasis supplied.)

At the 1990 session of the general assembly, KRS 533.010 was amended and reenacted. It now provides that

(1) *Any person* who has been convicted of a crime and who has not been sentenced to death may be sentenced to probation, probation with an alternative sentencing plan, or conditional discharge as provided in this chapter.

(2) Before imposition of a sentence of imprisonment, *the court shall consider the possibility of probation, probation with an alternative sentencing plan, or conditional discharge.* After due consideration of the nature and circumstances of the crime and the history, character, and condition of the defendant, probation, probation with an alternative sentencing plan, or conditional discharge should be granted unless the court is of the opinion that imprisonment is necessary for protection of the public because:

(a) There is substantial risk that during a period of probation, probation with an alternative sentencing plan, or conditional discharge the defendant will commit another crime; or

(b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or

(c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

(3) When the court deems it in the best interest of the defendant and the public, the court may order the person to work at community service related projects under the terms and conditions specified in KRS 533.070. Work at community service related projects shall be considered as a form of conditional discharge. (Emphasis supplied.)

The trial court's refusal to consider probation was based on the prohibitive language contained in KRS 533.060(1):

When a person has been convicted of an offense or has entered a plea of guilty

to an offense classified as a Class A, B, or C felony and the commission of such offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, such person shall not be eligible for probation, shock probation or conditional discharge.

The statutes clearly contain conflicting language. Where a conflict exists, the latter statute controls. *Brown v. Hoblitzell,* Ky., 307 S.W.2d 739 (1956). The Legislature, in enacting KRS 500.095(1) and in reenacting KRS 533.010 in 1990, is presumed to have been aware of KRS 533.-060(1), which has been in effect since 1976, and which was amended as recently as 1986. *Id.*

As used in KRS 500.095(1) and KRS 533.-010(2), the word "shall" is mandatory. KRS 446.010(29). And as used in KRS 533.010(1), the phrase "any person" means everyone (except, according to the statute, those sentenced to death). The trial court was thus obliged, when sentencing Williams to consider the possibility of probation, probation with an alternative sentencing plan, or conditional discharge, despite the language of the earlier statute, KRS 533.060(1), prohibiting such consideration.

I would set aside the sentencing in this case and remand this case to Fayette Circuit Court with directions to consider the sentencing alternative set forth in KRS 533.010 and KRS 500.095(1).